**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-2531

**TERRIANNE PAIGE HIEHLE,** in her individual capacity and behalf of all others similarly situated;
**KATRINA LILE,** in her individual capacity and behalf of all others similarly situated;
**KIMBERLI LASHAWAY,** in her individual capacity and behalf of all others similarly situated;

Plaintiffs,

v.

**EDWARD ABER**, In his individual and official capacities as Jail Commander of the La Plata County Jail;
**LA PLATA COUNTY, COLORADO**;
**LA PLATA COUNTY SHERIFF'S OFFICE**;
**SEAN SMITH**, in his individual and official capacities as Sheriff of La Plata County;
**MICHAEL SLADE**, in his individual capacity;
**JACOB HARRIS**, in his individual capacity;
**JOHN/JANE DOES #1-#10**, in their individual capacities;

Defendants.

---

### CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiffs, individually and behalf of all others similarly situated, bring the following Complaint and Jury Demand against the above-named Defendants by and through their attorneys, Jason Kosloski of Kosloski Law, PLLC, and Tyler Jolly and Kevin Mehr of Mehr Jolly, PLLC:

### INTRODUCTION

1. This case involves one of the most egregious and systemic violations of constitutional rights ever perpetrated by a law enforcement official against vulnerable individuals in their custody. For over five years, from February 2019 through July 2024, Defendant Edward Aber, while serving as the Jail Commander of the La Plata County Jail, engaged in a deliberate, systemic, and pervasive scheme to sexually exploit female inmates in his custody by repeatedly taking

advantage of his power and position to access and view digital recordings of their strip searches for his own sexual gratification.

2. Defendant Aber, entrusted with the care and custody of vulnerable individuals detained in the La Plata County Jail, instead used his position of absolute power and unfettered access to the jail's digital body camera video storage system to continuously satiate his base sexual desires. Over the course of more than five years, Defendant Aber accessed and viewed strip search videos of at least 117 different female inmates thousands of times, often viewing the same videos repeatedly weeks and months after the searches occurred, viewing some "countless times," and frequently accessing these intimate recordings from his home, hotel rooms while traveling, and other locations outside the jail facility.

3. These videos captured the most intimate and private aspects of the human body, including full frontal nudity and close-up views of female inmates' breasts, buttocks, and genitals during mandatory strip searches conducted during the booking process and at other times. Although the strip searches may have been conducted for legitimate security purposes related to contraband detection, Defendant Aber took advantage of and perverted these searches into a source of sexual thrill, entertainment, and gratification that had no legitimate law enforcement purpose whatsoever.

4. The scope and systemic nature of Defendant Aber's conduct is staggering. Digital forensic analysis revealed that Defendant Aber logged into the evidence management system approximately 3,166 times, with the vast majority of these logins focused on accessing strip search videos of female inmates. Defendant Aber accessed these videos from multiple unauthorized locations using various IP addresses, including his home, hotels during travel, and other locations outside of La Plata County. The evidence shows that Defendant Aber would often view multiple strip search videos of different female inmates in single sessions,

frequently late at night on in the early morning hours, demonstrating the purely prurient nature of his conduct.

5. This systemic sexual exploitation occurred while the female inmates where in the most vulnerable position possible - detained in custody, stripped of their liberty, dignity, and privacy, and entirely dependent on jail officials for their basic needs and safety. These women had no knowledge that their most intimate moments were being repeatedly viewed by the highest ranking jail official for his sexual pleasure, and they had no ability to consent to or to prevent this ongoing violation of their fundamental human dignity.

6. The constitutional violations in this case are clear and severe. Defendant Aber's conduct violated the Fourth Amendment and the Colorado Constitution's prohibitions against unreasonable searches and seizures, as his repeated viewing of strip search videos for his sexual gratification far exceeded any legitimate scope of detention authority. His actions also violated the Fourteenth Amendment's guarantee of substantive due process, as his abuse of government power for sexual gratification constitutes conduct that "shocks the conscience" and violates fundamental notions of human dignity and bodily integrity. Moreover, Defendant Aber's exclusive focus on female inmates, while rarely (if ever) accessing strip search videos of male inmates, demonstrates a clear pattern of gender-based discrimination that violates the Equal Protection Clause of the Fourteenth Amendment and the Colorado Constitution.

7. The institutional defendants - La Plata County, the Board of Commissioners, the Sheriff's Office, and Sheriff Sean Smith - bear responsibility for this system abuse through their policies, customs, practices, and failures to train and supervise that enabled and encouraged Defendant Aber's conduct. The institutional defendants failed to implement adequate oversight over the evidence management system, failed to monitor access to sensitive strip

search videos, failed to establish proper protocols for legitimate access to such materials, and failed to provide adequate training and supervision to prevent abuse of official authority.

8. Additionally, the institutional defendants have liability for Defendant Aber's violations of the Fourth and Fourteenth Amendments because Defendant Aber was a final policymaker for La Plata County and the Sheriff's Office regarding the operation of the La Plata County Jail. His actions, therefore, are directly imputed to the institutional defendants.

9. The harm caused by Defendant Aber's conduct extends far beyond his immediate victims. His actions have undermined public trust in law enforcement, violated the fundamental principles of human dignity that underlie our constitutional system, and reflect a culture of impunity that endangers all individuals who come into contact with the criminal justice system in La Plata County. This was system abuse that occurred for more than five years without intervention. There is an urgent need for comprehensive reform and accountability. This lawsuit aims to bring that reform and accountability - an effort to ensure that such egregious violations of constitutional rights never occur again in La Plata County or elsewhere.

10. Plaintiffs are a subset of these women who bring this lawsuit to achieve accountability for these horrifying abuses and to force La Plata County to make a change to protect the community. Plaintiffs are bringing this case in their individual capacity and on behalf of all others similarly situated.

## PARTIES

11.    Plaintiff Terrianne Paige Hiehle is a citizen of the state of Ohio. Plaintiff Hiehle was detained in the La Plata County Jail. Plaintiff Hiehle was subjected to strip searches that were recorded on body-worn cameras operated by La Plata County Sheriff's personnel. These recordings

were subsequently accessed and viewed by Defendant Aber for his sexual gratification without Plaintiff Hiehle's knowledge or consent. Plaintiff Hiehle brings this Complaint in her own individual capacity and on behalf of all others similarly situated.

12.     Plaintiff Katrina Lile is a citizen of the state of Colorado. Plaintiff Lile was detained in the La Plata County Jail. Plaintiff Lile was subjected to strip searches that were recorded on body-worn cameras operated by La Plata County Sheriff's personnel. These recordings were subsequently accessed and viewed by Defendant Aber for his sexual gratification without Plaintiff Lile's knowledge or consent. Plaintiff Lile brings this Complaint in her own individual capacity and on behalf of all others similarly situated.

13.     Plaintiff Kimberli Lashaway is a citizen of the state of Colorado. Plaintiff Lashaway was detained in the La Plata County Jail. Plaintiff Lashaway was subjected to strip searches that were recorded on body-worn cameras operated by La Plata County Sheriff's personnel. These recordings were subsequently accessed and viewed by Defendant Aber for his sexual gratification without Plaintiff Lashaway knowledge or consent. Plaintiff Lashaway brings this Complaint in her own individual capacity and on behalf of all others similarly situated.

14.     Defendant Edward Aber is an individual who, at all times relevant to this Complaint, was employed by the La Plata County Sheriff's Office as Jail Commander. Upon information and belief, Defendant Aber is a citizen of the State of Colorado. At all times relevant to this complaint, Defendant Aber was a peace officer under Colorado law and  acted under color of state law within the meaning of 42 U.S.C. § 1983.

15.     Defendant La Plata County is a political subdivision of the State of Colorado. At all times relevant to this Complaint, Defendant La Plata County operated and maintained the La Plata County Jail and employed the personnel (including Defendant Aber) responsible for the custody, care, and supervision of individuals detained therein.

16.     Defendant La Plata County Sheriff's Office is a law enforcement agency within La Plata County and responsible for operating the La Plata County Jail and maintaining custody of individuals detained therein. Defendant La Plata County employed the personnel (including Defendant Aber) responsible for the custody, care, and supervision of the individuals detained in the La Plata County Jail.

17.     Defendant Sean Smith is an individual who, at all times relevant to this Complaint, served as the Sheriff of La Plata County. In this capacity, Defendant Smith had supervisory authority over all Sheriff's Office personnel, including Defendant Aber, and was responsible for establishing and enforcing policies and procedures governing jail operations and the protection of constitutional rights of individuals in custody. Defendant Smith is sued in both his individual and official capacities. At all times relevant to this Complaint, Defendant Smith was a peace officer under Colorado law and acted under color of state law within the meaning of 42 U.S.C. § 1983.

18.     Defendant Michael Slade is an individual who, at all times relevant to this complaint, was employed by the La Plata County Sheriff. At all times relevant to this Complaint, Defendant Slade was a peace officer under Colorado law and acted under color of state law within the meaning of 42 U.S.C. § 1983.

19.     Defendant Jacob Harris is an individual who, at all times relevant to this complaint, was employed by the La Plata County Sheriff. At all times relevant to this Complaint, Defendant Harris was a peace officer under Colorado law and acted under color of state law within the meaning of 42 U.S.C. § 1983.

20.     Defendant John/Jane Does #1-#10 are individuals whose identity is currently unknown to Plaintiffs and, at all times relevant to this complaint, were employed by the La Plata County Sheriff. At all times relevant to this complaint, Defendants John/Jane Doe #1-#10 were peace officers under Colorado law and acted under the color of state law within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This

Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as those

claims are so related to the federal claims that they form part of the same case or controversy under

Article III of the United States Constitution.

22.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b), as the events giving

rise to these claims occurred in the District of Colorado.

## CLASS ALLEGATIONS

23.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a)

and 23(b)(2) and (3) on behalf of themselves and all others similarly situated.

24.     The proposed class is defined as:

> All female individuals who were detained in the La Plata County Jail between
>
> February 14, 2019, and July 14, 2024, and whose strip search videos were
>
> accessed and viewed by Defendant Edward J. Aber through the
>
> evidence.com system for purposes other than legitimate law enforcement
>
> activities.

25.     The class is so numerous that joinder of all members is impracticable. Based on the evidence

currently available, the class includes at least 117 female individuals whose strip search videos were

accessed and viewed by Defendant Aber, with the actual number likely being significantly higher.

26.     There are questions of law and fact common to the class, including but not limited to: (a)

whether Defendant Aber's conduct violated the constitutional rights of class members; (b) whether

the institutional defendants' policies, customs, and practices enabled or facilitated Defendant Aber's

conduct; (c) whether the institutional defendants failed to adequately supervise, train, or monitor personnel with access to sensitive evidence; (d) the appropriate measure of damages for the constitutional violations; and (e) the appropriate injunctive relief to prevent similar violations in the future.

27.     The claims of the named Plaintiffs are typical of the claims of the class members, as all class members were subjected to the same pattern of constitutional violations by Defendant Aber and the same institutional failures by the other defendants.

28.     Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no conflicts of interest with other class members, and Plaintiffs are represented by competent counsel experienced in civil rights litigation.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation would be impracticable given the number of potential class members and the common issues of law and fact involved. A class action will promote judicial efficiency and ensure consistent resolution of the legal and factual issues presented.

30.     The institutional defendants have acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FACTUAL ALLEGATIONS

31.     The La Plata County Jail is a detention facility operated by Defendants La Plata County and La Plata County Sheriff's Office, located in Durango, Colorado. The La Plata County Jail houses both pretrial detainees and sentenced individuals, including both male and female inmates.

32.     As part of standard booking procedures, all individuals brought to the La Plata County Jail are subjected to strip searches for security purposes, including the detection of contraband that

might be concealed on or within their bodies. These strip searches are conducted in private rooms by deputies of the same gender as the person being searched.

33.    During strip searches, inmates are required to disrobe completely, and deputies observe all parts of the inmate's body, including intimate areas such as priests, buttocks, and genitals. For female inmates, deputies observe the breasts to determine whether any contraband is hidden underneath, and the buttocks are spread to observe whether any contraband is secreted in the anus or vagina. These searches involve close-up observation of the most intimate parts of the human body.

34.    Deputies conducting strip searches wear body-worn cameras that capture the entire search process, including full frontal nudity and close-up views of inmates' intimate body parts. These recordings are automatically uploaded to and stored in evidence.com, a proprietary digital evidence management system created by Axon Enterprise, Inc, and controlled by the La Plata County Sheriff's Office.

35.    Access to the strip search videos stored in evidence.com is restricted to personnel with administrative credentials, typically those holding the rank of Lieutenant or above. This restriction exists because of the highly sensitive and intimate nature of the recordings and the significant privacy interests involved.

36.    The evidence.com system maintains detailed audit logs that record every instance when a user logs into the system, including the date and time of the access, the specific files viewed, the duration of viewing, and the IP address from which the access occurred.

37.    Under normal circumstances, strip search videos would only be reviewed (if at all) immediately after an incident if there were specific concerns about the search, such as if a subject was uncooperative, force was used, or contraband was found. There is no legitimate law

enforcement purpose for reviewing strip search videos under any other circumstances, and certainly no legitimate purpose for viewing such videos repeatedly over extended periods of time.

38.　　In 1997, Defendant Aber was hired by the Durango Police Department. He rose through the ranks and left in 2005 as a captain. While in the Durango Police Department, Defendant Aber was the subject of at least one allegation of sexual impropriety or harassment. When Defendant Aber left the Durango Police Department, he was hired by Defendants La Plata County and La Plata County Sheriff's Office (the institutional defendants). The institutional defendants knew that Defendant Aber had a history of being accused of sexual impropriety or harassment in connection with his work as a peace officer.

39.　　In 2018, Defendant Aber was promoted to the position of Jail Commander with the La Plata County Sheriff. In that position, Defendant Aber was the most senior official in charge of the La Plata County Jail and a final policymaker for the La Plata County Sheriff's Office. In this position, Defendant Aber had supervisory authority over all aspects of jail operations and personnel, including, as relevant here, the treatment of inmates, strip searches, the use of bodyworn cameras inside the jail, the use of bodyworn cameras during inmate strip searches, the storage of bodyworn camera footage of inmate strip searches, and the access of bodyworn camera footage of inmate strip searches.

40.　　Defendant Aber's position as Jail Commander placed him in a place of absolute authority over the inmates in his custody. Inmates were entirely dependent on Defendant Aber and his subordinates for their basic needs, safety, and well-being while detained.

41.　　Defendant Aber had absolute and unrestricted administrative access to all bodyworn camera videos of inmate strip searches. Nobody, including Defendant Aber or the institutional defendants took any steps to place safeguards, access controls, or even monitoring/auditing around Defendant Aber's unrestricted and absolute access.

42.     Defendant Aber quickly began taking advantage of his access. Beginning in February 2019, and continuing until July 2024, Defendant Aber engaged in a systemic and deliberate pattern of accessing and viewing strip search videos of female inmates for his own sexual gratification.

43.     Defendant Aber logged into the evidence.com system approximately 3,166 times, with the vast majority of these logins for the purpose of accessing strip search videos of female inmates.

44.     Defendant Aber accessed and viewed strip search videos depicting at least 117 different female inmates. Upon information and belief, the actual number of female inmates victimized by Defendant Aber is higher.

45.     Defendant Aber viewed some videos so much that they have been described as viewing them "countless times."

46.     Defendant Aber accessed and viewed these videos to satisfy his sexual motivation rather than any legitimate law enforcement purpose.

47.     Defendant Aber would repeatedly view the same strip search videos of individual female inmates multiple times over periods of weeks, months, and even years after the searches occurred.

48.     Defendant Aber would often access multiple strip search videos of different female inmates in the same viewing sessions.

49.     Upon information and belief, Defendant Aber rarely, if ever, viewed the strip search videos of male inmates despite the La Plata County Jail housing more male inmates than female inmates and the pods housing male inmates having a higher incidence of contraband compared to pods housing female inmates.

50.     Defendant Aber frequently accessed female inmate strip search videos late at night or in the early morning hours, and at other times when he was not working.

51.     Defendant Aber viewed female inmate strip search videos from his home, from within the La Plata County Jail, from hotel rooms in Denver, from residential addresses in Arizona, and from

other locations. Upon information and belief, Defendant Aber used a virtual private network (VPN) to conceal his true location so many of the views that appeared to originate from the La Plata County Jail actually originated from other locations.

52.     As one example of Defendant Aber's clear sexual interest in these videos, on August 12, 2019, Defendant Aber streamed eight female strip search videos from a hotel IP address starting at 6:38PM, demonstrating that he was accessing these intimate recordings for personal gratification while traveling.

53.     The systemic and abhorrent nature of Defendant Aber's conduct is further evidenced by his repeated viewing of strip search videos of specific female inmates who were the subject of a previous investigation into allegations of sexual contact between Defendant Aber and the female inmates.

54.     Defendant Aber took photographs or screenshots of the bodies, cleavage, breasts, and faces of at least some of the female inmates whose strip search videos he had accessed.

55.     Defendant Aber researched at least some of the female inmates whose strip search videos he accessed on social media such as Facebook.

56.     Defendant Aber's conduct represents a profound abuse of the official authority entrusted to him as Jail Commander and a complete breach of the duty he owed to the inmates in his custody. However, Defendant Aber does not bear the sole responsibility for this conduct. Defendant Aber's conduct was permitted by the institutional defendant's failure to properly train, supervise, and maintain effective policies and controls to prevent the foreseeable risk of Defendant Aber, a man they knew had a history of sexual impropriety, from having unfettered and unmonitored access to strip search videos. Defendant Aber's conduct was also permitted by the other law enforcement officers, including Defendants Slade and Harris who stood by and failed to intervene against Defendant Aber's constitutional violations.

57.     Defendant Aber approached Defendant Slade and Defendant Harris and informed them that he was viewing strip search videos. Both Defendant Slade and Defendant Harris recognized that there was no legitimate law enforcement purpose for Defendant Aber (or anyone else) to view strip search videos.

58.     Despite being fellow deputy sheriffs, neither Defendant Slade nor Defendant Harris took any steps to intervene against Defendant Aber's violation of the constitutional rights of the women whose strip search videos he was viewing.

59.     Further, the institutional defendants were aware that Defendant Aber regularly conducted closed-door "meetings" with female inmates in his office. These "meetings" raised concerns and suspicion amongst jail personnel. During one such "meeting," an employee knocked on Defendant Aber's office door and, upon opening it, observed a female inmate appearing from underneath Defendant Aber's desk. When questioned, Defendant Aber claimed that the inmate was merely adjusting computer wired under his desk.

60.     Despite this incident (and others), the institutional defendants continued to permit Defendant Aber unfettered access to strip search videos of female inmates.

61.     Ultimately, Defendant Aber resigned from the La Plata County Sheriff's Office in 2024 when at least fourteen female La Plata County Sheriff's Office employees reported multiple instances of alleged inappropriate sexual advances and comments made by Defendant Aber over the course of years. An investigation into these allegations, as well as allegations of Defendant Aber's sexual contact with inmates was launched, and in July 2024, Defendant Aber resigned.

62.     In October of 2024, Defendant Aber's work computers were analyzed. During this investigation, evidence of Defendant Aber's misuse of strip search videos was discovered, leading to criminal charges against Defendant Aber.

63.     In January of 2025, the Durango Herald published an article entitled "Widespread sexual harassment found after resignation of La Plata County Jail Commander," which named Defendant Aber and publicised the fact that Defendant Aber was being investigated for invasion of privacy for sexual gratification.

64.     On the same day that the Durango Herald article was published, Defendant Aber reset and wiped his personal Apple iPad. Upon information and belief, Defendant Aber wiped his personal iPad because the iPad contained additional evidence of his sexual misconduct against inmates in the La Plata County Jail as alleged in this Complaint.

65.     The systematic abuse perpetrated by Defendant Aber was enabled and facilitated by the policies, customs, and practices of the institutional defendants, including their failure to implement adequate oversight, monitoring, and safeguards.

66.     Despite the highly sensitive nature of strip search videos and the significant privacy interests involved, the institutional defendants failed to implement any meaningful monitoring or oversight of access to these materials through the evidence.com system.

67.     The institutional defendants failed to establish clear policies and procedures governing when and under what circumstances strip search videos could be legitimately accessed and viewed.

68.     The institutional defendants failed to implement any system for detecting or preventing unauthorized or inappropriate access to strip search videos, despite the availability of detailed audit logs that could have revealed Defendant Aber's pattern of abuse.

69.     The institutional defendants failed to provide adequate training to personnel with administrative access to evidence.com regarding the appropriate use of such access and the constitutional rights of individuals whose intimate recordings were stored in the system.

70.     The institutional defendants failed to implement adequate supervision of personnel with access to sensitive evidence, allowing Defendant Aber to operate without oversight for more than five years.

71.     The institutional defendants' failures created a custom or policy of deliberate indifference to the constitutional rights of inmates, enabling Defendant Aber's systematic abuse to continue undetected and unaddressed.

72.     The institutional defendants had actual or constructive notice of the risk that personnel with access to strip search videos might abuse that access for improper purposes, yet failed to take reasonable measures to prevent such abuse.

73.     The institutional defendants' failures were not isolated incidents but represented a pattern of deliberate indifference to the constitutional rights of inmates and a custom of inadequate oversight and supervision that enabled constitutional violations.

74.     Instead of taking appropriate and constitutional measures to prevent Defendant Aber's behavior, the institutional defendants permitted Defendant Aber to be the final policymaker for all matters relating to jail administration (including the conduct, recording, and viewing of inmate strip searches).

75.     As a direct and proximate result of Defendant Aber's conduct and the institutional defendants' enabling failures, Plaintiffs and class members have suffered severe and ongoing harm, including:

a.     Violation of their fundamental constitutional rights to privacy, dignity, and freedom from unreasonable searches and seizures;

b.     Severe emotional distress, humiliation, and psychological trauma from learning that their most intimate moments were repeatedly viewed for sexual gratification;

c.     Loss of dignity and sense of personal security and autonomy;

d.      Ongoing anxiety, depression, and post-traumatic stress related to the violation of their privacy and trust;

e.      Fear and distrust of law enforcement and the criminal justice system;

f.      Damage to their reputation and standing in the community.

76.     The harms suffered by Plaintiffs and class members are ongoing and will continue into the future, requiring ongoing medical and psychological treatment and support.

77.     The conduct of Defendants has caused Plaintiffs and all others similarly situated to suffer damages in amounts to be determined at trial, but in no event less than the jurisdictional minimum of this Court.

78.     The conduct of Defendants was willful, wanton, malicious, and oppressive, justifying an award of punitive damages to deter similar conduct in the future and to vindicate the important constitutional rights that were violated.

## CLAIMS FOR RELIEF[1]

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Fourth Amendment Unreasonable Search
### (Against Defendant Aber)

79.     Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

80.     At all times relevant to this Complaint, Defendant Aber acted under color of state law within the meaning of 42 U.S.C. § 1983.

81.     The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.

---

[1] Plaintiffs and all others similarly situated give notice that they intend to add Colorado state tort claims following the expiration of the applicable CGIA notice periods.

82.     Individuals in custody retain Fourth Amendment rights, including the right to be free from searches that exceed the legitimate scope of detention authority and the right to privacy in their intimate bodily areas.

83.     Strip searches of individuals in custody are constitutionally permissible only when conducted for legitimate security purposes, such as the detection of contraband or weapons.

84.     The scope of any search, including strip searches in detention facilities, must be reasonably related to the objectives of the search and not excessively intrusive in light of the circumstances.

85.     Defendant Aber's viewing of strip search videos for sexual gratification constituted unreasonable searches in violation of the Fourth Amendment.

86.     Defendant Aber's conduct was objectively unreasonable and violated clearly established Fourth Amendment rights that a reasonable sheriff's deputy in Defendant Aber's position would have known.

87.     As a direct and proximate result of Defendant Aber's violations, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

88.     Defendant Aber's conduct was willful, wanton, and malicious, justifying an award of punitive damages.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Fourteenth Amendment Substantive Due Process
### (Against Defendant Aber)

89.     Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

90.     At all times relevant to this Complaint, Defendant Aber acted under color of state law within the meaning of 42 U.S.C. § 1983.

91.     The substantive component of the Due Process Clause protects individuals from arbitrary and oppressive governmental action and bars certain government actions "regardless of the fairness of the procedures used to implement them."

92.     The Fourteenth Amendment protects fundamental rights including bodily integrity, human dignity, and freedom from sexual exploitation by government officials.

93.     Government conduct violates substantive due process when it "shocks the conscience" or violates fundamental notions of human dignity and decency.

94.     Defendant Aber's systematic sexual exploitation of female inmates through the viewing of their strip search videos for sexual gratification constitutes conduct that "shocks the conscience" and violates substantive due process.

95.     Defendant Aber's conduct violated clearly established substantive due process rights that a reasonable sheriff's deputy in Defendant Aber's position would have known.

96.     As a direct and proximate result of Defendant Aber's violations, Plaintiffs  and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

97.     Defendant Aber's conduct was willful, wanton, and malicious, justifying an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Fourteenth Amendment Equal Protection
### (Against Defendant Aber)

98.     Plaintiffs  and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

99.     At all times relevant to this Complaint, Defendant Aber acted under color of state law within the meaning of 42 U.S.C. § 1983.

100.    The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall deny to any person within its jurisdiction the equal protection of the laws.

101.    The Equal protection Clause prohibits government officials from treating individuals differently based on their membership in a protected class without adequate justification.

102.    Gender is a protected classification under the Equal Protection Clause, and government action that discriminates based on gender is subject to heightened scrutiny.

103.    Defendant Aber's conduct violated the Equal Protection Clause because he systematically targeted female inmates for sexual exploitation as described herein.

104.    Defendant Aber's discriminatory conduct was based solely on the gender of the inmates and Defendant Aber's sexual attraction to that gender and did not serve any legitimate governmental purpose.

105.    There was no legitimate justification for Defendant Aber's gender-based discrimination in accessing and viewing strip search videos.

106.    Defendant Aber's conduct violated clearly established equal protection rights that a reasonable sheriff's deputy in Defendant Aber's position would have known.

107.    As a direct and proximate result of Defendant Aber's violations, Plaintiffs  and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

108.    Defendant Aber's conduct was willful, wanton, and malicious, justifying an award of punitive damages.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Fourth Amendment Unreasonable Search - Failure to Intervene
### (Against Defendants Smith in his personal capacity, Slade, Harris, and Does #1-#10)

109.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

110.    At all times relevant to this Complaint, Defendants Smith, Slade, and Harris acted under color of state law within the meaning of 42 U.S.C. § 1983.

111.    Defendants Smith, Slade, Harris, and Does #1-#10 were aware that Defendant Aber was violating, or was about to violate, the clearly established Fourth Amendment rights of Plaintiffs and all those similarly situated.

112.    Defendants Smith, Slade, Harris, and Does #1-#10 had the ability to intervene to prevent Defendant Aber's violation of the Fourth Amendment rights of Plaintiffs and all those similarly situated.

113.    Defendants Smith, Slade, Harris, and Does #1-#10 did not intervene.

114.    As a direct and proximate result of Defendants Smith, Slade, Harris, and Does #1-#10's failure to intervene, Plaintiffs  and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Fourteenth Amendment Substantive Due Process - Failure to Intervene (Against Defendants Smith in his personal capacity, Slade, Harris, and Does #1-#10)

115.    Plaintiffs  and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

116.    At all times relevant to this Complaint, Defendants Smith, Slade, Harris, and Does #1-#10 acted under color of state law within the meaning of 42 U.S.C. § 1983.

117.    Plaintiffs  and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

118.    Defendants Smith, Slade, Harris, and Does #1-#10 were aware that Defendant Aber was violating, or was about to violate, the clearly established Fourteenth Amendment due process rights of Plaintiffs  and all others similarly situated.

119.    Defendants Smith, Slade, Harris, and Does #1-#10 had the ability to intervene to prevent Defendant Aber's violation of the Fourteenth Amendment due process rights of Plaintiffs and all others similarly situated.

120.    Defendants Smith, Slade, Harris, and Does #1-#10 did not intervene.

121.    As a direct and proximate result of Defendants Smith, Slade, Harris, and Does #1-#10's failure to intervene, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
**42 U.S.C. § 1983 - Fourteenth Amendment Equal Protection - Failure to Intervene**
**(Against Defendants Smith in his personal capacity, Slade, Harris, and Does #1-#10)**

122.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

123.    At all times relevant to this Complaint, Defendants Smith, Slade, Harris, and Does #1-#10 acted under color of state law within the meaning of 42 U.S.C. § 1983.

124.    Defendants Smith, Slade, Harris, and Does #1-#10 were aware that Defendant Aber was violating, or was about to violate, the clearly established Fourteenth Amendment due process rights of Plaintiffs and all others similarly situated.

125.    Defendants Smith, Slade, Harris, and Does #1-#10 had the ability to intervene to prevent Defendant Aber's violation of the Fourteenth Amendment equal protection rights of Plaintiffs and all others similarly situated.

126.    Defendants Smith, Slade, Harris, and Does #1-#10 did not intervene.

127.    As a direct and proximate result of Defendants Smith, Slade, Harris, and Does #1-#10's failure to intervene, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Monell Liability
### (Against Defendants La Plata County, La Plata County Sheriff, and Defendant Smith in his official capacity)

128.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

129.    Defendant Aber had final policymaking authority regarding the operation of the La Plata County Jail, and therefore acted as an alter ego for the La Plata County Sheriff's Office. Therefore, the institutional defendants are liable for Defendant Aber's actions.

130.    Defendant Smith had final policymaking authority regarding the operation of the La Plata County Sheriff's Office as a whole, and therefore acted as an alter ego for the La Plata County Sheriff's Office when he failed to intervene against Defendant Aber's violations. Therefore, the institutional defendants are liable for Defendant Smith's failure to intervene.

131.    Additionally, the federal constitutional violations described herein were caused by the policies, customs, and practices of the institutional defendants, including but not limited to:

a.    A policy or custom of permitting command staff (and especially Defendant Aber) to use inmates female inmates to satisfy sexual desires;

b.    A policy or custom of failing to adequately monitor and oversee access to sensitive evidence, including strip search videos;

c.    A policy or custom of failing to implement adequate safeguards to prevent abuse of the evidence management system;

d.    A policy or custom of deliberate indifference to the constitutional rights of inmates;

e.    A policy or custom of inadequate training and supervision of personnel with access to sensitive evidence;

f.    Hiring and retaining Defendant Aber;

g.      A policy or custom of failing to investigate, report, and address complaints or concerns about inappropriate conduct by supervisory personnel.

132.    These violations, along with other violations that Plaintiffs and all others similarly situated allege they will discover during the course of this case, were the moving force behind the constitutional violations described in this Complaint.

133.    The institutional defendants had actual or constructive notice of the risk that their policies, customs, and practices would lead to constitutional violations, yet they acted with deliberate indifference to that risk.

134.    As a direct and proximate result of the policies, customs, and practices of the institutional defendants, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### CRS § 13-21-131 - Violation of Article II, Section 7 of the Colorado Constitution - Unlawful Search
### (Against Defendant Aber)

135.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

136.    At all times relevant to this complaint, Defendant Aber was a peace officer and was acting under color of law.

137.    Article II, section 7 of the Colorado Constitution prohibits unreasonable searches and seizures.

138.    Article II, section 7 of the Colorado Constitution provides broader protections than the Fourth Amendment.

139.    Plaintiffs and all others similarly situated had a personal right to be free from unreasonable searches under the Colorado Constitution.

140.   Defendant Aber's conduct described more fully in this complaint violated this personal right of Plaintiff and all others similarly situated.

141.   As a direct and proximate result of Defendant Aber's actions, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

142.   Defendant Aber is not entitled to any sort of qualified immunity or "common law immunity" for his actions.

143.   Defendant Aber is not entitled to any sort of statutory limitation on liability, damages, or attorneys fees liability for his actions.

144.   Defendant Aber's employer, the institutional defendants, are required to indemnify Defendant Aber for any liability incurred pursuant to this Claim as Defendant Aber's employer was a causal factor in Defendant Aber's violations through their action or inaction.

## NINTH CLAIM FOR RELIEF
### CRS § 13-21-131 - Violation of Article II, Section 25 of the Colorado Constitution - Substantive Due Process
### (Against Defendant Aber)

145.   Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

146.   At all times relevant to this complaint, Defendant Aber was a peace officer and was acting under color of law.

147.   Article II, section 25 of the Colorado Constitution states that "No person shall be deprived of life, liberty or property, without due process of law."

148.   Article II, section 25 of the Colorado Constitution provides broader due process protections than the Fourteenth Amendment reflective of Colorado's unique history and circumstances.

149.    Plaintiffs and all others similarly situated have fundamental rights protected by Article II, section 25 of the Colorado Constitution including the rights to bodily integrity, human dignity, and freedom from sexual exploitation by government officials.

150.    Government conduct violates Article II, section 25 of the Colorado Constitution when it "shocks the conscience" or violates fundamental notions of human dignity and decency.

151.    Defendant Aber's systematic sexual exploitation of female inmates through the viewing of their strip search videos for sexual gratification constitutes conduct that "shocks the conscience" and violated Article II, section 25 of the Colorado Constitution.

152.    As a direct and proximate result of Defendant Aber's actions, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

153.    Defendant Aber is not entitled to any sort of qualified immunity or "common law immunity" for his actions.

154.    Defendant Aber is not entitled to any sort of statutory limitation on liability, damages, or attorneys fees liability for his actions.

155.    Defendant Aber's employer, the institutional defendants, are required to indemnify Defendant Aber for any liability incurred pursuant to this Claim as Defendant Aber's employer (the institutional defendants) was a causal factor in Defendant Aber's violations through their action or inaction.

### TENTH CLAIM FOR RELIEF
**CRS § 13-21-131 - Violation of Article II, Section 29 of the Colorado Constitution - Equal Protection**
**(Against Defendant Aber)**

156.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

157.    At all times relevant to this complaint, Defendant Aber was a peace officer and was acting under color of law.

158.    Article II, section 29 of the Colorado Constitution provides "Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex."

159.    Article II, section 29 of the Colorado Constitution provides broader equal protection rights than the Fourteenth Amendment reflective of Colorado's unique history and circumstances.

160.    Plaintiffs and all others similarly situated have fundamental rights to equal protection protected by Article II, section 29 of the Colorado Constitution.

161.    Defendant Aber's systematic sexual exploitation of female inmates through the viewing of their strip search videos for sexual gratification violated Article II, section 29 of the Colorado Constitution.

162.    As a direct and proximate result of Defendant Aber's actions, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

163.    Defendant Aber is not entitled to any sort of qualified immunity or "common law immunity" for his actions.

164.    Defendant Aber is not entitled to any sort of statutory limitation on liability, damages, or attorneys fees liability for his actions.

165.    Defendant Aber's employer, the institutional defendants, are required to indemnify Defendant Aber for any liability incurred pursuant to this Claim as Defendant Aber's employer (the institutional defendants) was a causal factor in Defendant Aber's violations through their action or inaction.

## ELEVENTH CLAIM FOR RELIEF
### CRS § 13-21-131 - Violation of Article II, Section 7 of the Colorado Constitution - Unlawful Search - Failure to Intervene

**(Against Defendants Smith in his personal capacity, Slade, Harris, and Does #1-#10)**

166.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

167.    At all times relevant to this Complaint, Defendants Smith, Slade, Harris, and Does #1-#10 were peace officers and were acting under color of law.

168.    Defendants Smith, Slade, Harris, and Does #1-#10 were aware that Defendant Aber was violating, or was about to violate, the Colorado constitutional rights of Plaintiffs and all others similarly situated to be free from unreasonable searches.

169.    Defendants Smith, Slade, Harris, and Does #1-#10 had the opportunity to intervene to prevent Defendant Aber's violations.

170.    Defendants Smith, Slade, and Harris did not intervene against Defendant Smith, Slade, and Harris' violations.

171.    As a direct and proximate result of Defendants Smith, Slade, Harris, and Does #1-#10's failure to intervene, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

172.    Defendants Smith, Slade, Harris, and Does #1-#10 are not entitled to any sort of qualified immunity or "common law immunity" for their actions and inactions.

173.    Defendants Smith, Slade, Harris, and Does #1-#10 are not entitled to any sort of statutory limitation on liability, damages, or attorneys fees liability for their actions and inactions.

174.    Defendants La Plata County and La Plata County Sheriff are required to indemnify Defendants Smith, Slade, Harris, and Does #1-#10 for any liability incurred under this claim as Defendants Smith, Slade, Harris, and Does #1-#10 were or are employed by the institutional defendants.

**TWELFTH CLAIM FOR RELIEF**

### CRS § 13-21-131 - Violation of Article II, Section 25 of the Colorado Constitution - Substantive Due Process - Failure to Intervene
### (Against Defendants Smith in his personal capacity, Slade, Harris, and Does #1-#10)

175.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

176.    At all times relevant to this Complaint, Defendants Smith, Slade, Harris, and Does #1-#10 were peace officers and were acting under color of law.

177.    Defendants Smith, Slade, Harris, and Does #1-#10 were aware that Defendant Aber was violating, or was about to violate, the Colorado constitutional due process rights of Plaintiffs and all others similarly situated.

178.    Defendants Smith, Slade, Harris, and Does #1-#10 had the opportunity to intervene to prevent Defendant Aber's violations.

179.    Defendants Smith, Slade, and Harris did not intervene against Defendant Smith, Slade, and Harris' violations.

180.    As a direct and proximate result of Defendants Smith, Slade, Harris, and Doandes #1-#10's failure to intervene, Plaintiffs and all others similarly situated  suffered damages in an amount to be determined at trial.

181.    Defendants Smith, Slade, Harris, and Does #1-#10 are not entitled to any sort of qualified immunity or "common law immunity" for their actions and inactions.

182.    Defendants Smith, Slade, Harris, and Does #1-#10 are not entitled to any sort of statutory limitation on liability, damages, or attorneys fees liability for their actions and inactions.

183.    Defendants La Plata County and La Plata County Sheriff are required to indemnify Defendants Smith, Slade, Harris, and Does #1-#10 for any liability incurred under this claim as Defendants Smith, Slade, Harris, and Does #1-#10 were or are employed by the institutional defendants.

## THIRTEENTH CLAIM FOR RELIEF
### CRS § 13-21-131 - Violation of Article II, Section 29 of the Colorado Constitution - Equal Protection - Failure to Intervene
### (Against Defendants Smith in his personal capacity, Slade, Harris, and Does #1-#10)

184.    Plaintiffs and all others similarly situated incorporate all preceding paragraphs as if fully set forth herein.

185.    At all times relevant to this Complaint, Defendants Smith, Slade, Harris, and Does #1-#10 were peace officers and were acting under color of law.

186.    Defendants Smith, Slade, Harris, and Does #1-#10  were aware that Defendant Aber was violating, or was about to violate, the Colorado constitutional equal protection rights of Plaintiffs and all others similarly situated.

187.    Defendants Smith, Slade, Harris, and Does #1-#10 had the opportunity to intervene to prevent Defendant Aber's violations.

188.    Defendants Smith, Slade, Harris, and Does #1-#10 did not intervene against Defendant Smith, Slade, and Harris' violations.

189.    As a direct and proximate result of Defendants Smith, Slade, Harris, and Does #1-#10's failure to intervene, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

190.    Defendants Smith, Slade, Harris, and Does #1-#10 are not entitled to any sort of qualified immunity or "common law immunity" for their actions and inactions.

191.    Defendants Smith, Slade, Harris, and Does #1-#10 are not entitled to any sort of statutory limitation on liability, damages, or attorneys fees liability for their actions and inactions.

192.    Defendants La Plata County and La Plata County Sheriff are required to indemnify Defendants Smith, Slade, Harris, and Does #1-#10 for any liability incurred under this claim as Defendants Smith, Slade, Harris, and Does #1-#10 were or are employed by the institutional defendants.

## CONCLUSION AND PRAYER FOR RELIEF

193.    Plaintiffs and all others similarly situated respectfully requests that the Court enter judgment in their favor and against Defendants, and award them all relief  allowed by law and equity, including but not limited to:

a.    Compensatory damages according to proof at trial, including but not limited to damages for past and future pecuniary and non-pecuniary losses, physical and mental pain, emotional distress, humiliation, fear, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and all other non-pecuniary losses.

b.    Punitive and exemplary damages for all claims as allowed by law in an amount to be determined at trial.

c.    Attorney's fees and costs.

d.    Pre-judgment and post-judgment interest at the highest possible rate.

e.    Declaratory judgment that the actions of Defendants violated the United States and Colorado Constitution.

f.    Injunctive relief to meaningfully modify Defendants La Plata County, La Plata County Sheriff, and Smith's policies, procedures, and oversight.

g.    Such further relief as the Court may deem just, proper, and appropriate.

**PLAINTIFFS DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: August 13, 2025

/s/_____
Jason Kosloski (CO Bar # 50214)
KOSLOSKI LAW, PLLC
1401 Lawrence Street, Suite 1600
Denver, CO 80202
(720) 605-6487
jkosloski@koslloskilaw.com

*Attorney for Plaintiffs and proposed Class Counsel*

/s/_____

Tyler Jolly (CO Bar # )
Kevin Mehr (CO Bar # )
MEHR JOLLY, PLLC
xxx
xxx
xxx
xxx
xxx
*Attorneys for Plaintiffs* and Proposed Class Counsel