**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02763-GPG-KAS

C.B., et al.;

Plaintiffs,

v.

EDWARD ABER, et al.;

Defendants.

_____

Civil Action No. 25-cv-2531-GPG-KAS

TERRIANNE PAIGE HIEHLE, et al.;

Plaintiffs,

v.

EDWARD ABER, et al.;

Defendants.

_____

## C.B. PLAINTIFFS' MOTION FOR APPOINTMENT OF RATHOD MOHAMEDBHAI LLC AND JOHN BAXTER ATTORNEY AT LAW AS INTERIM CLASS COUNSEL
_____

Plaintiffs C.B.; R.C.; J.E.; S.H.; A.H.; A.H.; M.J.; J.L.; M.N.; E.P.; S.R.; M.S.; A.S.; N.T.; K.T.; R.W.; I.W.; and J.W ("C.B. Plaintiffs") respectfully move this Court to appoint their attorneys from the law firms of RATHOD | MOHAMEDBHAI LLC ("RM") and JOHN BAXTER ATTORNEY AT LAW (collectively the "RM Group") as interim class counsel.

**BACKGROUND**

When being booked into the La Plata County Jail, female prisoners were forced to strip naked and endure a visually and physically invasive strip search. [*See* ECF No. 1, C.B. Compl. ¶¶ 68-69]. The Jail filmed these humiliating and invasive searches and saved the footage on the Jail's evidence database. [*Id*. at 70-71]. Per the Jail's policy, all officials with a rank of lieutenant or above were given unrestricted access to these strip videos, which showed naked female prisoners having their genitalia and body parts manipulated. [*Id*. ¶ 79]. Jail Commander Ed Aber took advantage of his unfettered access to these videos, viewing them multiple times per day for his own sexual gratification. [*Id*. at ¶¶ 88-100]. In July 2025, Mr. Aber was criminally charged for this sexual misconduct.

By the end of summer, two putative class actions were filed on behalf of the women who survived Commander Aber's unlawful conduct. On August 13, 2025, the law firms Kosloski Law, PLLC and Mehr Jolly, PLLC, filed a class action complaint on behalf of three plaintiffs identified by their full names. *Hiehle, et al. v. Aber, et al.*, No. 25-cv-02531 (D. Colo). (the "Hiehle Complaint").[1]

When the Hiehle Complaint was filed, the RM Group was investigating this case and meeting with potential clients. Three weeks after the Hiehle Complaint was filed, the RM Group filed a separate class action complaint on behalf of eighteen individuals identified by their initials. *See C.B., et al. v. Aber, et al.*, No. 25-cv-02763-GPG-KAS (D. Colo). (the "C.B. Complaint"). The RM Group has continued to locate victims; it now

---

[1] After the RM Group filed their complaint, the *Hiehle* group filed additional entries of appearances for attorneys from their relative's Kentucky-based law firm that describes itself as "Kentucky Injury, ERISA, Life & Disability Insurance Lawyers." MEHR FAIRBANKS TRIAL LAWYERS, https://www.mehrfairbanks.com/, (last visited November 18, 2025).

1

represents thirty-five survivors and is in the process of signing several more (Ex. 1, Omnibus Decl., ¶ 21).

The Court ordered the RM Group and Mehr Group to file Motions for Appointment as Interim Class Counsel. [ECF No. 59]. The Court must now weigh the Rule 23 factors and decide which applicant is "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). With due respect to the *Hiehle* attorneys, the RM Group is best equipped to represent the interests of the putative class due to its breadth and quality of experience, success in civil rights litigation, ties to the local community, and its trauma-informed approach to representing survivors of sexual abuse.

## LEGAL STANDARD

When "more than one class action has been filed" and "more than one lawyer seeks the appointment," *Manual for Complex Litigation* (Fourth) § 21.271 (2004), a court must choose who to appoint as interim class counsel. *See* Fed. R. Civ. P. 23(g)(2). In making this choice, federal courts employ a three-step analysis. *See Owen-Brooks v. Dish Network Corp.*, 2023 WL 5747618, at *2 (D. Colo. Aug. 2, 2023).

***First***, the Court weighs four mandatory factors under Rule 23(g)(1) that it "must consider." Those factors are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). ***Second***, the Court has discretion to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B). ***Third***, the Court must confirm that the chosen

2

counsel can "fairly and adequately represent the interests of the class." *Id*. at 23(g)(2) (noting that the Court may appoint class counsel only if the applicant is adequate under Rule 23(g)(4)). Ultimately, the central inquiry for the Court boils down to which potential class counsel is "best able to represent the interests of the class." *Id.* at 23(g)(4).

## ANALYSIS

Each of the three steps weighs in favor of appointing the RM Group as interim class counsel. First, the mandatory Rule 23(g) factors support the RM Group's application due to counsels' relevant litigation experience and expertise in the subject matter, and the resources that the RM Group can commit to this case. *See infra*, Section I. Drawing from its experience in past sexual assault cases, the RM Group understands the importance of a victim-centered approach to litigation, and it has already taken steps to ensure that victims' privacy rights are respected and provided them access to mental health care. Further, the fact that Mr. Baxter's practice is located in La Plata County will allow victims to access attorneys in-person, which the other Denver- and Kentucky-based attorneys cannot offer. *See infra*, Section II. Finally, the RM Group's reputation leaves no doubt that it can adequately represent the survivors in this case. *See infra*, Section III. The Court shouldn't turn away the best counsel in favor of the first. *See infra*, Section IV.

**I.    The mandatory factors under Rule 23(g)(1)(A) each support the RM Group.**
    A.    <u>The RM Group's legal and mental-health professionals have already invested heavily in the survivors and their claims.</u>

Under the first mandatory factor, the Court considers "the work counsel has done in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A).

**Investigating facts and claims.** The RM Group has investigated the claims at issue in this case by speaking for hours with former law enforcement officials in La Plata

3

County about the improper policies and practices of Sheriff Sean Smith. (*Id.* at ¶¶ 144, 196–99). The RM Group's attorneys and professionals have visited numerous of the survivors of this case in person, in three different counties across the State. (*Id.*). Collectively, those professionals already personally met and earned the trust of almost a third of the currently known class. That demonstrates the breadth of RM's investigation and exemplifies the resources that RM Group intends to devote to this case. (*Id.* at ¶ 20).

The RM Group has also already drafted the 53-page *C.B. Complaint*, filed C.B. Plaintiffs' Motion to Proceed Anonymously to protect the survivors' privacy, negotiated a stay of briefing on Defendants' Motions to Dismiss until the Court appoints interim class counsel, and submitted CGIA notices on behalf of the class. (*Id.* at ¶¶ 105, 144–46).

**Exhausting administrative remedies under the PLRA.** The first mandatory Rule 23 factor also considers counsel's work to exhaust any administrative remedies. *See Barnes v. D.C.*, 2025 WL 947684, at *20 (D.D.C. Mar. 28, 2025) (noting counsel had "filed two administrative due process complaints on behalf of the representative plaintiffs"). The RM Group worked with victims currently incarcerated in Colorado Department of Corrections ("CDOC") facilities across the State to administer a three-part approach to ensure victims exhausted any available administrative remedies under the Prison Litigation Reform Act. (*Id.* at ¶¶ 105, 144). In total, the RM Group estimates that it has already spent a collective 300-plus hundred hours on this case. (*Id.* at ¶ 147). That investment has helped developed claims and theories of relief, preserved valuable evidence, and exhausted claims for victims currently incarcerated at CDOC facilities.

B.  <u>The RM Group has diverse and complementary experience in class and complex civil actions.</u>

Under the second mandatory Rule 23 factor, the Court must weigh "counsel's

4

experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). The Omnibus Declaration describes the RM Group's relevant experience in class action cases, cases involving sexual abuse and invasions of privacy, and cases challenging prison conditions. (*See generally* Ex. 1, Omnibus Decl.). Whether in settlement or at trial, the RM Group has a strong track record of achieving notable results for clients. Notably, the RM Group has the three largest police misconduct settlements or trial verdicts in Colorado history.[2]

**The RM Group has a record of success in class actions.** A sample of the RM Group's class action work includes: *Alvarado v. Pella Windows*, 2022CV30303 (Colo. Dist. Ct.) (certified wage-theft class action), in which Mr. Cron, Mr. Azmoudeh, and co-counsel drafted the class complaint, the class certification motion, a successful motion protecting absent class members from intrusive discovery, and mediation statements. As a result, Mr. Cron and Mr. Azmoudeh helped win class-wide relief after a final fairness hearing. (*Id.* at ¶¶ 85, 114). Numerous attorneys from the RM Group litigated *M.C. v. St. Mary's Hospital*, 2022CV03048 (Mesa Cty. Dist. Ct) (putative sexual assault class action). Mr. Azmoudeh, Ms. Hill Butler, and Mr. Rathod were the primary authors of various briefs,

---

[2] Most recently, attorneys at the RM Group achieved the largest civil rights verdict in Colorado history. Austen Erblat, *Denver jury awards nearly $20M to 6 bystanders injured in LoDo police shooting*, CBS News (Oct. 21, 2025), https://www.cbsnews.com/colorado/news/denver-jury-awards-nearly-20m-bystanders-injured-lodo-police-shooting/. And RM Group attorneys have also contributed to the largest known civil rights settlements in Colorado. Faith Miller, *Aurora agrees to pay $15M in settlement with Elijah McClain's parents*, Colorado Newsline (Nov. 19, 2021), https://coloradonewsline.com/2021/11/19/aurora-agrees-to-pay-15m-in-settlement-with-elijah-mcclains-parents/; Spencer Wilson, *Christian Glass case: $19 million settlement reached in death of 22-year-old shot and killed by police*, CBS News (May 24, 2023), https://www.cbsnews.com/colorado/news/christian-glass-settlement-shooting-colorado-parents-clear-creek-county-historic-millions/.

pleadings, and written discovery, including the class complaint, a motion to secure our clients' anonymity, a class certification motion, and multiple mediation statements and responses, along with various other RM lawyers who contributed on discrete tasks. (*Id.* at ¶¶ 9, 115). RM Lawyers worked with law enforcement and the DA to develop evidence and to assist our clients in exercising their rights as victims, and forensics experts to preserve and investigate terabytes of highly sensitive, digital evidence. After a confidential settlement, RM Lawyers spent months resolving all potential claims by third party payors, including federal, state, and private payors. (*Id.*). RM Lawyers are currently pressing other class actions in Colorado state and federal court. (*Id.* at ¶ 73).

The RM Group's class-action experience is not limited to representing plaintiffs. Before joining RM, Mr. Sandhu participated in class arbitrations and actions, drafting dispositive motions and helping to achieve complete defense judgments in actions exceeding $100 million in claimed damages. (*Id.* at ¶ 140). And Mr. Cron, Ms. Vaughan, Ms. Hill Butler, Ms. Wiese Valiant, and Mr. Sandhu clerked for federal district and appellate judges, working on cases that involved class actions, civil rights, prison litigation, and sexual misconduct, many of which involved issues of first impression. (*Id.* at ¶¶ 76, 83, 128, 143, 159).

**The RM Group's attorneys have litigated as *parens patriae* on behalf of the United States.** Prior to joining RM, Ms. Vaughan and Ms. Halpern were both employed by the United States in senior litigation roles in which they brought impact litigation on behalf of classes of people. Ms. Vaughan was a Senior Trial Attorney in the United States Department of Justice's Civil Rights Division, "investigat[ing], resolv[ing], and monitor[ing] for compliance dozens of cases, all involving claims on behalf of classes of students and

6

many involving sexual misconduct including sexual assault." (*Id.* at ¶ 64). While she is "not permitted to discuss some of [her] prior work at the Department of Justice," her declaration provides a sample of twelve class and complex actions that Mrs. Vaughan led or litigated for the Department of Justice, including two involving sexual assault or sex-based discrimination. (*Id.* at ¶¶ 64–72).

Ms. Halpern previously served as a trial attorney and acting supervisory attorney for the Equal Employment Opportunity Commission. As chief regional lawyer for the EEOC, Mrs. Halpern led "systemic and large class cases" on behalf of large groups of workers as *parens patriae*, including *EEOC v. JBS USA*, Civ. No. 1:10-cv-02103 (D. Colo)., a case involving hundreds of Somali, Muslim refugees who suffered discrimination; *EEOC v. The Original HoneyBaked Ham Company of Georgia*, Civ. No. 1:14-02560 (D. Colo. 2011), which involved over 12 victims of sexual harassment; and *EEOC v. Smokin' Spuds, Inc.*, Civ. No. 1:14-02206 (D. Colo. 2014), a case with nearly 20 victims of sexual harassment. (*Id.* at ¶¶ 144–46).

**The RM Group has extensive experience litigating sexual assault claims.** Mr. Baxter has litigated a case under nearly identical facts. He represented four plaintiffs in La Plata County District Court, who brought claims for invasion of privacy for the sexual gratification of the defendant. The claims involved surreptitious video recordings of plaintiffs' exposed genitals, which the defendant used for masturbation. In November of 2022, a jury returned a $3.5 million verdict in his clients' favor. (*Id.* at ¶ 188).

Ms. Halpern has also "worked on behalf of large class sexual harassment cases," "including several involving fifteen or more victims." (*Id.* at ¶ 45). While at the EEOC, Ms. Halpern worked with Mr. Mohamedbhai and Mr. Rathod on the case of *EEOC and*

7

*Baltazar v. Vail Run Community Resort Association,* Civ. No. 1:15-cv-01592 (D. Colo)., which involved eight victims of sexual assault, extortion, and retaliation." (*Id.* at ¶¶ 45, 55). For their work, these attorneys were awarded the Colorado Trial Lawyers Association Case of the Year Award in 2016. At RM, Ms. Halpern litigated *Chavez v. Lake County,* No. 18-cv-03249 (D. Colo. 2020), which involved the sexual harassment of three dispatch officers. (*Id.* at ¶ 48). Ms. Halpern also litigated in *Ehrlich v. Rocky Mountain Crisis Partners*, No. 24-cv-02147 (D. Colo.) while at RM, which involved half a dozen victim counselors who were sexually harassed by 988 callers, including exposure to sexual fantasies and masturbation. (*Id.*). Mr. Bohnet-Gomez led the litigation in *Wardlaw v. Western Colo. Regional Dispatch Center*, No. 23-cv-834-DDD-NRN (D. Colo.) a case involving a police officer's groping of a police dispatcher employed by a separate governmental entity. (*Id.* at ¶ 100). Mr. Mohamedbhai and Mr. Rathod received a $3.5 million verdict in the case of *Wilson v. Pauling*, Case No. 2013CV35298 (Den. Dist. Ct), where RM's client was sexually assaulted by her boss and former romantic partner.

**The RM Group has extensive experience challenging prison conditions.** The RM Group is highly experienced with regard to litigation in the correctional setting, including cases involving multiple plaintiffs. Its ongoing cases include *Chivers-King v. Wyo. Dep't of Family Services*, 24-cv-00039-SWS (D. Wyo), in which Mr. Cron and Ms. Wiese-Valiant are challenging officials' uses of solitary confinement, restraints, and force against juveniles. With six plaintiffs, sixteen defendants, hundreds of thousands of pages of discovery, hundreds of hours of video, and incidents spanning over five years, the case poses logistical challenges similar to this case. (*Id.* at ¶¶ 88, 160). And Mr. Azmoudeh, Mr. Bohnet-Gomez, Ms. Wiese-Valiant, and Mr. Mohamedbhai are litigating *Burch v.*

8

*Huerfano County*, 25-cv-00975-GPG-MDB (D. Colo)., which involves allegations of excessive force, deliberate indifference, and *Monell* claims. (*Id.* at ¶¶ 101, 118, 160).

**The RM Group has extensive experience with complex electronic discovery.** While many civil rights cases involve large amount of electronic data, this case will likely be at the high end due to the years of stored videos, access logs, and retention protocols. The RM Group is well equipped to handle any logistical obstacles presented by large amounts of data, having dealt with similar issues in *M.C. v. St. Mary's Hospital*, which included terabytes of data. The RM Group's Motion is supported by a discovery vendor who previously worked with the RM Group on a "on digital forensic matters involving sexual assault victims in large scale class action litigation." (Ex. 2, Iron Oak Discovery Letter, p. 1). That vendor states that the RM Group has "consistently demonstrated not only the specialized knowledge to understand the complex technical details of forensic evidence, but also the utmost sensitivity and diligence required to safeguard this highly confidential and sensitive material." (*Id.*).

C. <u>The RM Group's attorneys are experts in civil rights and sexual abuse cases, and even helped write and develop the causes of action in this case.</u>

Under the third mandatory Rule 23 factor, the Court "must consider" "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). The RM Group's core practice is to advocate "for the civil rights of all individuals against governmental and institutional abuses of power." *See* Advocate & Empower, https://rmlawyers.com/. The attorneys who comprise the RM Group are not generalists or ERISA lawyers; they have spent their careers developing a specialized expertise in civil rights litigation. To wit, the RM Group's reputation extends beyond Colorado, having represented clients in civil rights case in Wyoming, Utah, Oklahoma, Texas, North Carolina, and Arizona.

9

As a result of their devotion to this particular practice area, the RM group has consistently delivered outstanding results on behalf of people who have endured governmental misconduct or survived sexual abuse, all while providing representation that is both relentless and trauma informed. For example, the RM Group has secured the largest trial verdict in a civil rights case, the two largest civil rights settlements in the State of Colorado, and has secured the largest settlement for a sexual abuse case in Colorado. (Ex. 1, Omnibus Decl., ¶¶ 14, 103, 116). The RM Group's expertise is further evidenced by the scores of presentations and publications it has shared on class actions, prisoner litigation, section 1983, and the ELEIA. (*Id.* at ¶¶ 34, 50–53, 89, 120, 161, 180).

D. <u>The RM Group has significant financial and human resources that it has already brough to bear in this case.</u>

Under the fourth and final mandatory Rule 23 factor, the Court "must consider" the resources that counsel can dedicate to this case. Fed. R. Civ. P. 23(g)(1)(A)(iv). The RM Group has assigned twelve attorneys and a senior paralegal with diverse skill sets and experiences to work on this case. (*Id.* at ¶¶ 5, 185–206). Their experience is buttressed by the work of Ms. Snow and the Rocky Mountain Victim Law Center ("RMvlc"), who are offering mental health and victim advocacy support to all survivors, with all costs covered by the RM Group. (*Id.* at ¶¶ 207–227; Ex. 3, RMvlc Declaration, pp. 1–3). The RM Group will also benefit from their strong working relationships with discovery vendors with whom they worked in prior cases. In a prior case, that type of close collaboration allowed RM Lawyers to "uncover[] the identities of additional victims who had not previously been identified by law enforcement." (Ex. 2, Iron Oak Letter, p. 1). Electronic discovery review and analysis is not cheap. Based on past cases, the RM Group anticipates that it will need a litigation fund of over $5 million for experts and other costs, which it has already

10

budgeted for. (Ex. 1, Omnibus Decl., ¶ 20).

II. **The Court should weigh heavily the trust that the RM Group has earned and the investment it has made in scores of victims' mental health.**

Rule 23 also permits the Court to weigh "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court should consider the investment the RM Group has made in the survivors' mental health, and the trust it has earned from survivors and the community.

**Forming rapport with survivors.** Under Rule 23, the Court should consider the relationships the RM Group has formed with the plaintiffs. *See Local 2507, Uniformed EMTs, Paramedics & Fire Inspect. v. City of New York*, 2024 WL 4276495, at *7 (S.D.N.Y. Sept. 24, 2024) (noting the movants' "familiar[ity]" with the "Plaintiffs"). The RM Group's professionals have personally met and formed rapports with many of the victims in this case, including visiting multiple times at various correctional facilities. (*Id.* at ¶¶ 144, 198–201). The RM Group also spent multiple days facilitating media interviews between various clients and media outlets, preserving the clients' anonymity. (*Id.* at ¶ 145).

**Providing mental health services to all survivors.** Under Rule 23(g)(1)(B), the Court should weigh the care the RM Group has offered to all victims in this case—clients or otherwise. The RM Group includes Audra Snow, who is a licensed clinical social worker who works with Mr. Baxter. (*Id.* at ¶¶ 217–26). On this case, she has been actively collaborating with staff from Sexual Assault Services Organization (SASO), Durango's local survivor-led nonprofit that provides advocacy, a 24-hour crisis line, support groups, and prevention education to ensure ongoing, trauma-informed support for those impacted by this case. Ms. Snow also coordinates support through the Ed Aber Support Group, a bi-weekly gathering created specifically for victims of Commander Aber's depravity. (*Id.*).

11

In addition to utilizing Ms. Snow's abilities and resources, the RM Group has contracted with the RMvlc, which provides legal services and representation related to victims' rights, trainings for attorneys, which ensure "the holistic legal needs of crime victims are addressed in a competent and ethical manner that accounts for the impact of trauma and actively resists re-traumatization." (Ex. 3, RMVLC Decl., ¶¶ 5–7). The RM Group contracted with RMvlc to "ensure all survivors—whether they were [its] clients or otherwise—had access to trauma-informed advocacy throughout the legal process." (*Id*. at ¶ 9). According to RMvlc, the RM Group's "decision to preemptively reach out to RMvlc to ensure their representation is trauma informed evidences RM's commitment to trauma informed care," which is "imperative" in these cases." (*Id*. at ¶¶ 11–12).

**Protecting the survivors' anonymity.** Without denigrating the *Hiehle* group's representation, the RM Group's sensitivity towards sexual trauma has already manifested in different litigation choices. Based on past experiences, it was immediately apparent to the RM Group that they needed to protect the survivors' anonymity. The RM Group acted proactively to convince the DA's office to seal the protection orders, (Ex. 4, Baxter Email with DA, p.1)., and filed the C.B. Complaint using their clients' initials. The *Hiehle* Complaint does not offer the survivors this anonymity. Besides the intrinsic benefit of anonymity, anonymizing the victims has practical benefits as well, given that some victims may not come forward if they fear public exposure.

**Earning trust in Colorado.** While the RM Group has earned its reputation in the Colorado community primarily through its civil rights successes, its reputation as skilled, tenacious, and objective attorneys transcends. For example, several RM lawyers were deputized as Colorado Assistant Attorneys General to lead an investigation brought by

12

the Colorado Commission on Judicial Discipline into judicial misconduct, including sexual misconduct, at the highest levels. In that case, Mr. Azmoudeh, Mr. Mohamedbhai, and Mr. Cron led the investigation and disciplinary proceedings against a former Chief Justice of the Colorado Supreme Court, culminating in a Stipulation for Public Censure. *See Matter of Nathan B. Coats*, 2023CO44 (Special Tribunal of Colorado Supreme Court). (*Id.* at ¶¶ 16, 119). RM has also been hired by numerous law enforcement officers, including command staff from various sheriff offices, to represent them in their own civil rights cases. Mr. Cron and Mr. Bohnet-Gomez represented Holly Kluth, the former Undersheriff of Douglas County Sheriff's Office, in a First Amendment case against her employer. *See Kluth v. Spurlock et al.*, No. 21-cv-3417-NYW-MEH (D. Colo). Mr. Bohnet-Gomez, Ms. Halpern, Ms. Hill Butler, and Mr. Rathod represented four former command staff members of the Adams County Sheriff's Office, earning a verdict in excess of $5 million. *See Coates v. Bd. of County Commr's*, No. 20-cv-01936-STV (D. Colo). (*Id.* at ¶¶ 48, 99, 130).

Mr. Baxter has developed a sterling reputation in southwestern Colorado, as he has lived and practiced in La Plata County for over 25 years and is intimately familiar with the La Plata County Jail and its employees, having visited the jail over 200 times. (*Id* at ¶¶187–95). That familiarity is what caused many of the survivors in this case to contact Mr. Baxter as their preferred counsel. (*Id* at ¶¶198–99). The RM Group's reputation in Colorado and in La Plata County has already benefitted the survivors. Since they filed this action, law enforcement officers in La Plata have proactively reached out to the RM Group to preemptively share valuable insight the sheriff's policies. (*Id* at ¶¶ 144, 196).

III. **The RM Group can fairly and adequately represent the interests of a class of sexual-assault survivors.**

Finally, the Court must confirm that the RM Group can "fairly and adequately

13

represent the interests of the class." Fed. R. Civ. P. 23(g)(2). A firm meets this standard so long as the firm does not have any interests in conflict with the putative class, and if they have experience in these types of actions. *Piney v. City of New York*, 2025 WL 3089894, at *7 (S.D.N.Y. Nov. 5, 2025) (finding proposed counsel adequate based on a lack of conflicts and their experience in the case); *see also Brown v. JBS USA Food Co.*, 2025 WL 103888, *12 (D. Colo. Jan. 15, 2025). The RM Group has taken steps to ensure there is no interest in conflict between it and the putative class. (*Id.* at ¶ 22). And as discussed above, the RM Group has the expertise to serve this class.

**IV.** **The "first-filed" factor does not supplant this analysis.**

Although the Hiehle Complaint was filed three weeks before the C.B. Complaint, that factor is irrelevant because Rule 23 is concerned with finding the "best" counsel, not the first" Fed. R. Civ. P. 23(g)(2). Therefore, courts give weight to the first-filed action only if all other factors are completely equal. *See Clark on Behalf of DaVita, Inc. v. Thiry*, 2014 WL 4050057, at *4 (D. Colo. Jan. 7, 2014). Where, as here, "the balance tip[s] in favor of a particular firm," "'first to file' by itself has little to do with who is best qualified to lead the case." *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, *2 n.3 (S.D. Cal. Mar. 1, 2013).

The limited value of the first-filed rule is particularly acute where, as here, the later-filed action was filed later only because attorneys engaged in "pre-litigation planning" that "exemplifies a commitment to limiting duplicative filings and work, resulting in less expense and delay for the named plaintiffs, the putative class members, the defendants, and the court." *See In re Nelnet Serv., LLC*, 2023 WL 1108253, at *6 (D. Neb. Jan. 30, 2022). Rather than rush to the courthouse, the RM Group was engaging in substantial investigate work, interviewing and signing up clients, and speaking with law enforcement

personnel with knowledge of the facts underlying this case. RM Group counsel also filed notices under the CGIA to exhaust their clients' tort claims; helped clients administratively exhaust grievances and drafted a Motion to Proceed Anonymously. (Ex. 1, Omnibus Decl., ¶¶ 105, 144, 147, 162, 196, 201). Refusing to engage in these pre-filing steps and rushing to the courthouse would not be "evidence of [a lawyers] adequacy" and might "support the contrary inference." *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003).

The first-filed rule is especially inapposite here, where the *Hiehle* attorneys did not develop these claims. When it does apply, the first-filed rule works to protect attorneys who expend considerable effort "ferret[ing] out wrongs that may be difficult or impossible for individual plaintiffs ever to identify." *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 81 (S.D.N.Y. 2000). Here, the Hiehle Complaint was filed weeks after Commander Aber's misconduct was discovered and Colorado media publicized the story.[3] And the Hiehle Complaint is based on the facts presented Commander Aber's arrest affidavit.[4] Given their case was based on public information, and not any "ferret[ing]" by their counsel, it would not make sense to give the Mehr Group the benefit of the first-filed rule.

## CONCLUSION

WHEREFORE Plaintiffs respectfully request that the Court appoint the RM Group as interim class counsel in the above captioned consolidated cases.

---

[3] Katie Langford, *Former Colorado jail commander charged with watching inmate strip-search videos for sexual gratification*, THE DENVER POST (July 24, 2025), https://www.denverpost.com/2025/07/24/jail-police-misconduct-colorado-edward-aber-durango/.

[4] In contrast, the *C.B.* Complaint includes numerous allegations outside the arrest affidavit, which was the fruition of the RM Group's robust investigative efforts. (*Id*. at ¶¶ 144, 196–99).

15

Respectfully submitted this 25th day of November 2025.

/s/ Neil S. Sandhu
Felipe Bohnet-Gomez
Matthew Cron
Iris Halpern
Qusair Mohamedbhai
Siddhartha Rathod
Omeed M. Azmoudeh
Virginia Hill Butler
Neil Singh Sandhu
Katie Wiese Valiant
Aria Vaughn
Crist Whitney
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence St., Suite #100
Denver, Colorado 80238
(303) 578-4400
fbg@rmlawyers.com
mc@rmlawyers.com
ih@rmlawyers.com
qm@rmlawyers.com
sr@rmlawyers.com
oa@rmlawyers.com
vb@rmlawyers.com
ns@rmlawyers.com
kw@rmlawyers.com
av@rmlawyers.com
cw@rmlawyers.com

/s/ John Baxter
John Baxter
JOHN BAXTER ATTORNEY AT LAW
1099 Main Ave., Suite 500
Durango, Colorado 81301
(970) 903-9578
baxterlaw@gmail.com

*Counsel for Plaintiffs*

16