**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02763-GPG-KAS

C.B.;
R.C.;
J.E.;
S.H.;
A.H.;
A.H.;
M.J.;
J.L.;
M.N.;
E.P.;
S.R.;
M.S.;
A.S.;
N.T.;
K.T.;
R.W.;
I.W.; and
J.W.

Plaintiffs, individually and on behalf of all others similarly situated,

v.

EDWARD ABER, in his individual capacity and official capacity as Jail Commander of the La Plata County Jail;
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LA PLATA;
JACOB HARRIS, in his individual capacity;
MICHAEL SLADE, in his individual capacity; and
SEAN SMITH, in his official capacity as Sheriff of La Plata County;

Defendants.

_____

**C.B. PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

_____

At the direction of La Plata County Sheriff Sean Smith, every woman entering the La Plata County Jail is forced to strip naked and endure visual and physical penetration on camera. Even if that strip search did not reveal anything abnormal, that footage is stored for years on a server that is freely accessible to everyone ranked lieutenant or higher. Sheriff Smith placed no limits on the purpose for which his team could access those videos, what time of day they could access the videos, where they could access those videos from, how many times they could view the videos, or whether they could download the videos. Sheriff Smith did not even monitor or audit how the videos were being accessed. You can guess what happened next.

The Commander of the La Plata County Jail, Defendant Edward Aber, spent years abusing his authority to access and sexually stimulate himself to video recordings in which incarcerated people were forced to strip naked and endure physical and visual penetration. Throughout his tenure, Commander Aber would log in to his Jail's evidence database using the credentials he received as Jail commander, use a VPN to conceal that he was often at home or in a hotel room, harvest hundreds of videos of over a hundred people,[1] download his favorites to his personal devices, and view them repeatedly for his own sexual pleasure.

Commander Aber's sexual misconduct is depraved, but it is not a surprise. During his nearly thirty years as a law enforcement officer in southern Colorado, Commander Aber left in his wake a trail of victims, credible reports of sexual misconduct, and buried complaints. Rather than take his misconduct seriously, his employers downplayed concerns and promoted him to higher and higher offices. Now that the dam is broken, and reports of his misconduct have flooded

---

[1] At least one of the people housed in the female cellblock of La Plata County Jail, whose strip search videos Commander Aber abused, identifies as male. While this Complaint focuses on Commander Aber's targeting of people whom he perceived to be female, it does not ignore that some of Commander Aber's victims may in fact be male or nonbinary.

national headlines, Commander Aber's enablers have attempted to distance themselves from his misconduct. But the record reveals that Commander Aber was able to inflict this harm only because the institutions that were charged with protecting the women of La Plata County—including La Plata's sheriff and Jail guards—turned a blind eye to Commander Aber's sordid pattern of sexual misconduct.

Plaintiffs are eighteen of the women whose bodies have been invaded by Commander Aber, and whose rights have been abandoned by the officials who swore to protect them. To hold Commander Aber and the government that once incarcerated them to account, Plaintiffs bring this Complaint on behalf of themselves and all others similarly situated.

## PARTIES

1.      Plaintiffs C.B.; R.C.; J.E.; S.H.; A.H.; A.H.; M.J.; J.L.; M.N.; E.P.; S.R.; M.S.; A.S.; N.T.; K.T.; R.W.; I.W.; and J.W. are women who were once in custody at the La Plata County Jail, all of whom are over the age of eighteen.

2.      C.B.; J.E.; A.H.; A.H.; M.J.; J.L.; E.P.; S.R.; M.S.; A.S.; N.T.; K.T.; R.W.; I.W.; and J.W. are residents of Colorado.

3.      R.C. is a resident of South Carolina.

4.      S.H. is a resident of New Mexico.

5.      M.N. is a resident of Wyoming.

6.      Defendant Commander Edward Aber ("Commander Aber") is an individual who was employed as a law enforcement officer in southern Colorado from 1997 to 2024.

7.      Commander Aber served in the Durango Police Department between 1997 and 2005, and the La Plata County Sheriff's Department between 2005 and 2024.

8.      Commander Aber served as Jail Commander of the La Plata County Jail from

3

2018 to 2024.

9.      At all times relevant to this Complaint, Commander Aber was a citizen of the

State of Colorado.

10.     At all times relevant to this Complaint, Commander Aber was a peace officer

under Colorado law.

11.     At all times relevant to this Complaint, Commander Aber acted under color of

state law within the meaning of 42 U.S.C. § 1983.

12.     La Plata County, sued through Defendant Board of County Commissioners of the

County of La Plata as required by Colo. Rev. Stat. § 30-11-105, is a local governmental entity

organized under Colorado law and a proper entity to be sued under 42 U.S.C. § 1983 and Colo.

Rev. Stat. § 13-21-131.[2]

13.     La Plata County is responsible for the La Plata County Sheriff's Office and La

Plata County Jail (the "Jail").

14.     The La Plata County Sheriff's Office is a governmental arm of La Plata County.

15.     The current Sheriff of La Plata County is Sean Smith.

16.     At all times relevant to this Complaint, Sheriff Smith was a citizen of the State of

Colorado.

17.     At all times relevant to this Complaint, Sheriff Smith, in his official capacity,

acted under color of state law within the meaning of 42 U.S.C. § 1983.

18.     Sheriff Sean Smith, in his official capacity, is a proper person to be sued under 42

_____

[2] Consistent with Colo. Rev. Stat. § 30-11-105, this suit names as defendant "The Board of
County Commissioners of the County of La Plata." But it refers to the County as "La Plata
County" and "The Board of County Commissioners of the County of La Plata," interchangeably.

U.S.C. § 1983.[3]

19.     The La Plata County Sheriff is the final policymaker for the La Plata County

Sheriff's Office, a law enforcement agency within La Plata County. In this role, the La Plata

County Sheriff is responsible for (1) establishing and enforcing policies and procedures

governing the La Plata County Sheriff's Office; and (2) operating the La Plata County Sheriff's

Office, including investigating and evaluating reports of misconduct, imposing discipline on its

employees, and making other personnel decisions.

20.     The La Plata County Sheriff is also the final policy and decision maker for the La

Plata County Jail, which is the largest detention facility in Southwest Colorado. The Jail employs

certified and non-certified deputies, civilian support staff, medical staff, and kitchen staff.

21.     A spectrum of people are incarcerated at the Jail: people of all genders; people

who are awaiting trial and people who have already been convicted; and people who have been

accused of misdemeanors and people who have been accused of felonies.

22.     In his role as final policymaker of the Jail, Sheriff Smith is responsible for (1)

establishing and enforcing policies and procedures governing the La Plata County Jail; (2)

operating the La Plata County Jail, including investigating and evaluating reports of misconduct,

imposing discipline on its employees, and making other personnel decisions; (3) maintaining the

custody and safety of the individuals incarcerated therein; and (4) protecting the constitutional

and statutory rights of all personnel employed by the Jail and all individuals incarcerated therein.

23.     Defendant Michael Slade is an individual who, at all times relevant to this

Complaint, was employed as a Sergeant and deputy sheriff by the La Plata County Sheriff.

---

[3] The La Plata Board of County Commissioners of the County of La Plata and La Plata County
Sheriff Smith are referred to collectively as the "Institutional Defendants."

24.     At all times relevant to this Complaint, Sergeant Slade was a noncertified deputy sheriff as described in section Colo. Rev. Stat. § 16-2.5-103(2). Consequently, Sergeant Slade was a peace officer as defined by Colo. Rev. Stat. § 24-31-901(3).

25.     At all times relevant to this Complaint, Sergeant Slade acted under color of state law within the meaning of 42 U.S.C. § 1983.

26.     Defendant Jacob Harris is an individual who, at all times relevant to this Complaint, was employed as a Lieutenant and deputy sheriff by the La Plata County Sheriff.

27.     At all times relevant to this Complaint, Lieutenant Harris was a peace officer as defined by Colo. Rev. Stat. § 24-31-901(3).

28.     At all times relevant to this Complaint, Lieutenant Harris acted under color of state law within the meaning of 42 U.S.C. § 1983.

## JURISDICTION

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because those claims form the same case and controversy as the federal claims.

30.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b), as the events giving rise to these claims occurred in the District of Colorado.

**I.      Through circumstances outside of their control, Plaintiffs were committed into the custody of the La Plata County Jail, where they were strip searched while being recorded.**

31.     Plaintiffs C.B.; R.C.; J.E.; S.H.; A.H.; A.H.; M.J.; J.L.; M.N.; E.P.; S.R.; M.S.; A.S.; N.T.; K.T.; R.W.; I.W.; and J.W. are women who were once in custody at the La Plata County Jail.

32.     As described in more detail below, Plaintiffs (like all women entering the La Plata

County Jail) were forced to disrobe and endure a visually and physically invasive strip search upon entering the La Plata County Jail.

33.    That strip search was filmed, and that footage was uploaded to evidence.com.

34.    Plaintiffs were recently notified that over at least the last five years, Commander Aber had abused his access to videos of their strip searches for his own sexual gratification.

35.    None of Plaintiffs are currently incarcerated.

**II.    Defendants institute a policy of hiring and promoting people with a history of sexual misconduct and stifling complaints of sexual misconduct.**

36.    Former law enforcement officers in La Plata County have described a practice and policy by Institutional Defendants of hiring and promoting people with a history of sexual misconduct while simultaneously stifling reports of misconduct against law enforcement officers.

37.    In one instance, a Durango Police Department (DPD) officer approached an administrative commander at the Durango Police Department (DPD Officer #1) to report that she had been sexually harassed by a lieutenant of the La Plata County Sheriff's Department.

38.    DPD Officer #1 contacted the Sheriff's Department to inform them of this report. Despite receiving a credible report that one of their lieutenants sexually harassed another law enforcement officer, the Sheriff's Department never opened an investigation in response to this report, nor did it discipline the lieutenant accused of sexual harassment.

39.    When DPD Officer #1 asked the Sheriff's Department why that department did not conduct an investigation into this allegation, the Sheriff's Department responded that DPD takes accusations of sexual harassment more seriously than the Sheriff's Department, thereby admitting that the Sheriff's Department has a culture of ignoring complaints of sexual

misconduct.

40.     In another instance, a male DPD officer (DPD Officer #2) sexually harassed a female DPD officer, then violated the shielding laws by contacting that same victim.

41.     DPD maintained records of this misconduct, which it would have made available to other law enforcement organizations had those organizations requested.

42.     DPD also reported this incident to databases that were available for inspection by law enforcement organizations.

43.     Sheriff Smith therefore knew or should have known that DPD Officer #2 committed sexual harassment. Still, Sheriff Smith hired DPD Officer #2 as a reserve deputy in the La Plata Sheriff's Department.

44.     In other instance, a DPD officer sexually harassed a female DPD evidence technician.

45.     DPD also maintained records of this misconduct, which it would have made available to other law enforcement organizations had those organizations requested.

46.     DPD also reported this incident to databases that were available for inspection by law enforcement organizations.

47.     Sheriff Smith therefore knew or should have known that this former officer committed sexual harassment. Still, Sheriff Smith hired that former officer as a deputy in the La Plata Sheriff's Department.

48.     Based on his familiarity with these incidents, DPD Officer #1 correctly concluded that the Institutional Defendants have a policy of hiring former DPD officers who they knew or should have known were credibly accused of sexual misconduct.

49.     Based on his familiarity with these incidents, DPD Officer #1 correctly concluded

that Defendant Sheriff Sean Smith hires these high-risk DPD officers because he can guarantee their loyalty, and he can ensure they do not report him or anyone else in the La Plata County Sheriff's Department for misconduct.

50.     Based on his familiarity with these incidents, DPD Officer #1 correctly concluded that Institutional Defendants have created a culture where employees and officers in the La Plata County Sheriff's Department regularly fail to report observed sexual misconduct by other employees and officers, that Institutional Defendants fail to investigate reports of sexual misconduct by their employees and officers, and that Institutional Defendants fail to punish or deter sexual misconduct by their employees and officers.

### III.     Defendants hire and promote Commander Aber despite his extensive history and practice of sexual harassment.

51.     Commander Aber was hired by the Durango Police Department in 1997, beginning a nearly three-decade long career as a law enforcement officer in La Plata County, Colorado.

52.     Even during his time as a police officer, there were red flags about Commander Aber's inappropriate sexual behavior.

53.     While serving as a police officer with the Durango Police Department, Commander Aber was reported for sexual harassment. That allegation was known, or should have been known, by the Institutional Defendants.

54.     This report of Commander Aber's sexual misconduct was reported to supervisors in the La Plata County Sheriff's Office, including to the Sheriff.

55.     Defendant Sheriff Smith is in fact personal friends with Commander Aber, and through his relationship had intimate familiarity with the allegations of sexual misconduct raised

against Commander Aber.

56.    Despite Commander Aber's record of sexual misconduct, the Durango Police Department promoted Commander Aber multiple times, eventually making him a captain.

57.    In 2005, Commander Aber applied for a job in the La Plata County Jail.

58.    Both Institutional Defendants were privy to Commander Aber's personnel file and therefore knew that he had been credibly accused of committing sexual misconduct while acting as a peace officer in the Durango Police Department.

59.    The Sheriff nevertheless hired Commander Aber to a supervisory role within the La Plata County Jail in 2005.

60.    Between 2005 and 2024, Commander Aber developed a well-known reputation for suspicious behavior, impropriety with inmates, and sexual misconduct.

61.    **Taking Inmates on Excursions.** Commander Aber would regularly take female inmates on "errands."

62.    Commander Aber would use his authority to remove them from the Jail, place them in a vehicle, and take them off-site to industrial parks, where they would do chores such as fold clothes while Commander Aber watched and talked to them.

63.    Female inmates were eager to get a reprieve from the Jail, so they would willingly agree to accompany Commander Aber on these excursions.

64.    Commander Aber used these trips to gain the female inmates' trust.

65.    The impropriety of these excursions would be apparent to any reasonable observer, as the females would wear their high-visibility Jail garb on the trips, be taken out of the Jail through public or observable walkways, while they were not wearing restraints, for no discernable legitimate purpose.

66.    Indeed, there was no legitimate law enforcement reason to take female inmates outside of the jail to conduct chores.

67.    **Visiting Inmates.** On at least one reported occasion, but likely more frequently, Commander Aber visited a female inmate's cell, for no discernable purpose other than to sexually harass her.

68.    On another occasion, and possibly more frequently, Commander Aber visited a female inmate in her cell without turning on his body-worn camera. Commander Aber pinned the inmate against the cell's wall, pushing his forearm into her throat. Commander Aber told the inmate that he "own[ed]" her and she was in "[his] jail."

69.    The inmate reported this incident to supervisory Jail staff, including her case manager. Even though it was against Jail policy for Commander Aber to visit women in their cells, or for him to interact with an inmate without turning on his body-worn camera, the Jail staff did not investigate the incident.

70.    Instead, Institutional Defendants disregarded the report, finding the report uncredible just because it was made by an inmate.

71.    **Harassing Inmates in his Office.** On at least one reported occasion, but likely more frequently, Commander Aber brought female inmates to his office and shut the door, with no discernable purpose.

72.    On one occasion, a Jail employee entered Commander Aber's office to discover Commander Aber sitting at his desk while a female inmate crouched underneath it near his crotch.

73.    Circumstances indicated that Commander Aber had pressured the inmate into sexual acts, but Commander Aber asserted that the inmate was just fixing wires under his desk.

74.    **Contacting Female Inmates via Internet.** On at least one occasion, but likely more frequently, Commander Aber messaged a female inmate via social media, sending her a picture of a nude cartoon, and telling her that the picture "reminded [him] of" the inmate.

75.    The inmate considered reporting the incident to Jail staff, but decided that report would be futile given the staff's practice of ignoring reports about Commander Aber's sexually inappropriate behavior.

76.    **Harassment of Female Jail Employees.** Commander Aber had a practice of harassing the Jail's female employees. In 2024, fourteen of these female employees came forward to report his behavior.

77.    Commander Aber allegedly called a female co-worker "sexy in a white trash way."

78.    Commander Aber once explained to a female employee what "erotica" meant to him by describing a dream in which he choked a woman.

79.    Commander Aber also once told a female employee that he sat next to her because of her cleavage, among other allegations.

80.    The acts described in this Section II were known or should have been known by the Institutional Defendants because Commander Aber's actions were reported to the Sheriff by employees of the Jail, were observed or should have been observed by the Sheriff when conducting his oversight responsibilities of the Jail, and were openly discussed by members of the Jail's staff.

81.    The Sheriff failed to institute or execute adequate policies that would (1) facilitate reporting of Jail employees' sexual misconduct, (2) provide for meaningful investigations of allegations against Jail employees, (3) prevent or deter sexual misconduct by Jail employees, and

(4) punish those who did commit sexual misconduct within the Jail.

82.    The failure by Institutional Defendants to investigate or reprimand Commander

Aber for this misconduct, which they knew or should have known of, is emblematic of their

policy to ignore sexual misconduct, and instead promote those who engage in sexual misconduct,

giving them greater power and opportunity to commit future sexual misconduct.

83.    Instead, in 2018, Sheriff Smith promoted Commander Aber to Jail Commander

with the La Plata County Jail, which made him the senior-most official in the La Plata County

Jail.While the Sheriff was the ultimate policy and decision maker of the Jail, Commander Aber

was given significant discretion to run the Jail, and implement and enforce policies on a day-to-

day basis. In his new role, Commander Aber had supervisory authority over all aspects of Jail

operations and personnel, including (1) the Jail's policies on when and how to strip search

inmates, (2) the uses of body-worn and other cameras inside the Jail, (3) the storage of camera

footage of inmate strip searches, (4) the access of camera footage of inmate strip searches, (5) the

conditions of the prison, and (6) the supervision, discipline, and promotion of Jail personnel.

84.    Commander Aber's position as Jail Commander placed him in a position of

absolute authority over the inmates in his custody. Inmates were entirely dependent on

Commander Aber and his subordinates for their basic needs, safety, and well-being while

detained.

IV.    **Jail policies require staff to perform an intrusive strip search on camera and provide Jail employees with unfettered access to that footage.**

85.    As part of the Jail's standard booking procedures, all individuals brought to the La

Plata County Jail were forced to undergo a strip search.

86.    At the outset of these strip searches, inmates are required to disrobe completely.

13

Jail deputies then visually inspect all parts of the inmate's body, including intimate areas such as breasts, buttocks, and genitals. Jail deputies then manipulate the inmate's body to inspect for hidden contraband. For female inmates, this means one or more Jail deputies physically manipulate their breasts, spread their buttocks, anus, and vagina, and feel around the rest of their body to evaluate whether the inmate is hiding any contraband.

87.    Per Jail policy, Jail deputies are required to wear body-worn cameras during these strip searches. That body-worn camera footage captures the most intimate portions of the female inmates' bodies, including close-up shots of their breasts, and shots of deputies spreading their buttocks, anus, and vagina.

88.    Per Jail policy, regardless of whether contraband is found, that body-worn camera footage is automatically uploaded to the Jail's evidence.com database, which is controlled by the Sheriff, where it is stored for years.[4]

89.    According to at least one inmate, the women are not notified that these invasive searches are being recorded.

90.    Intake isn't the only time that the women of La Plata County Jail are forced to endure invasive searches on camera.

91.    Per Jail policy, the Jail Commander (or his designee) can order a strip search of an entire cellblock at his discretion.

92.    Once ordered, women are forced to line up along a wall, and deputies conduct an additional strip search of every inmate in the cellblock.

---

[4] An investigative report indicates that some of the videos that were stored on the Jail's evidence.com database were purged after five years, but it is not yet clear whether the evidence.com system purges all strip search videos automatically, and under what conditions.

93.     Per Jail policy, these cellblock strip searches follow the same rules as intake strip searches: inmates are required to disrobe completely; Jail deputies visually inspect all parts of the inmate's body, including intimate areas such as breasts, buttocks, and genitals; and Jail deputies manipulate the inmate's body to inspect for hidden contraband, manipulating their breasts, spreading their buttocks, anus, and vagina, and feeling around the rest of their body to evaluate whether the inmate is hiding any contraband.

94.     Like the intake strip searches, these cellblock strip searches are captured on body-worn cameras. But cellblock strip searches are also captured by cameras placed on or near the ceiling of the cellblock. Like the intake videos, the footage of cellblock strip searches is uploaded to evidence.com, which is controlled by the Sheriff.

95.     Per the Sheriff's policy, women who are placed on suicide watch are also forced to strip naked while Jail officials record them. Just like the strip searches, this footage is uploaded to evidence.com.[5]

96.     Per Jail policy, Jail officials with a rank of lieutenant or above (including Commander Aber) are given unfettered access to view the strip search footage that is stored on evidence.com.

97.     At least nominally, the purpose of the Jail's strip search & recording policy is to search for contraband, preserve evidence of any contraband that is found, and preserve the footage in case there were other concerns about the search.

98.     Therefore, strip search videos should be reviewed only if the search raised concerns, such as if the Jail deputy found contraband during the search or used force against the

---

[5] The footage of the intake strip searches, cell block strip searches, and inmates on suicide watch are referred to collectively as "strip search videos."

inmate.

99.    But there is no legitimate law enforcement need to preserve the footage of uneventful strip searches—which is the case for most strip searches at the La Plata County Jail. There is similarly no legitimate law enforcement justification to upload these intimate videos (which contain sexually invasive footage with no evidentiary value) to the evidence.com database. There is similarly no legitimate law enforcement justification to give Jail officials (including Commander Aber) unfettered access to this footage.

100.    The Institutional Defendants knew that these sexually invasive videos were obviously ripe for abuse, so they made a policy that only those with the rank of lieutenant or above could access the footage on evidence.com.

101.    But, despite knowing of the obvious risk that these videos would be abused, the Institutional Defendants did not place or enforce any meaningful limits on the manner in which its officials holding the rank of lieutenant or above could access these videos. They did not restrict Jail officials' ability to (1) access uneventful videos, (2) access the videos without good cause, (3) access the videos from outside the Jail, (4) download or take screenshots of the videos, or (5) access the videos multiple times.

102.    The Institutional Defendants, despite their awareness of the risk, similarly did not create or enforce any policy that would have monitored who was accessing these videos, from where, when, how many times, and for what purpose—even though their evidence.com system was already capable of tracking and providing this information.[6]

---

[6] The evidence.com system maintains detailed audit logs that record every instance when a user logs into the system, including the date and time of the access, the specific files viewed, the duration of viewing, and the IP address from which the access occurred.

103.    Because the Institutional Defendants failed to place meaningful restrictions on Commander Aber's ability to access and abuse the strip search footage, despite the obvious potential for such abuse, Commander Aber had absolute and unrestricted access to this footage.

104.    Having been given free rein by the Institutional Defendants' policies, or lack thereof, Commander Aber soon began abusing his official authority to access the strip search footage for his sexual gratification.

## V.    Commander Aber accesses, downloads, and repeatedly rewatches hundreds of strip search videos for his own sexual gratification.

105.    During his time at the Jail, Commander Aber became addicted to accessing and viewing strip search videos of female inmates for his own perverted ends.

106.    Empowered by the Institutional Defendants' decision to give him unfettered access to the strip searches, and their policy of hiring, promoting, and failing to investigate or discipline sexual deviants, Commander Aber engaged in repeated, continuous, and broad abuse of these videos.

107.    **Frequency of access to database.** During this period, Commander Aber logged into the evidence.com system at least 3,166 times.

108.    Most, if not all, of these logins were for the purpose of accessing strip search videos of female inmates.

109.    That means that during his time as Jail Commander, Commander Aber logged into evidence.com to view the strip search videos on an average of over 1.5 times per day.

110.    **Number of videos accessed.** Commander Aber accessed and viewed strip search videos depicting at least 115 different female inmates.

111.    **Number of times rewatched.** Once logged into the system, Commander Aber

would repeatedly view the same strip search videos of female inmates multiple times.

112.    Commander Aber would often access multiple strip search videos of different female inmates during the same viewing sessions.

113.    Commander Aber viewed these strip search videos multiple, and even "countless," times, according to reports.

114.    **Location of viewing.** Commander Aber viewed female inmate strip search videos from his home, from within the La Plata County Jail, from hotel rooms in Denver, from residential addresses in Arizona, and from other locations.

115.    **Time of access.** Commander Aber frequently accessed female inmate strip search videos late at night or in the early morning hours.

116.    **Duration of access.** Commander Aber would watch the same videos over periods of weeks, months, and even years after the searches occurred.

117.    Commander Aber was only able to access such videos due to the Jail's policies of retaining strip search videos even when the videos lacked any evidentiary or law enforcement value, and of retaining the booking strip search videos for years.

118.    **Offline preservation of photos.** Commander Aber took photographs or screenshots of the bodies, cleavage, breasts, and faces of at least some of the female inmates whose strip search videos he had accessed, including the Plaintiffs.

119.    **Offline harassment of victims.** Commander Aber would occasionally make personal contact with the women whose strip searches he was watching for his own sexual pleasure. For instance, and as described above, Commander Aber would take select inmates on inappropriate excursions; would visit their cells without a legitimate purpose, outside of the view of others; and would bring them to his office to coerce them into conducting sexual acts. He

would also add some of the women as friends on Facebook, and comment on photos of them in swimsuits, expressing his physical attraction to them.

120.    As one example of Commander Aber's clear sexual interest in these videos, on August 12, 2019, Commander Aber streamed eight female strip search videos from a hotel IP address starting at 6:38PM, demonstrating that he was accessing these intimate recordings for personal gratification in the evening while traveling.

121.    Commander Aber rarely, if ever, viewed the strip search videos of inmates classified as male by the Jail, despite the La Plata County Jail housing significantly more male inmates than female inmates, and the pods housing male inmates having a higher incidence of contraband compared to pods housing female inmates.

VI.    **Sergeant Slade and Lieutenant Harris turn a blind eye to Commander Aber's suspicious viewing habits.**

122.    Sergeant Slade sat near Commander Aber's office and regularly saw him inviting inmates into his office without turning his body-worn camera on.

123.    Sergeant Slade admits that this is not something he personally would have done.

124.    Around 2018, Commander Aber approached Sergeant Slade to purportedly discuss contraband in the Jail.

125.    Commander Aber directed Sergeant Slade to watch old strip search videos of female inmates to evaluate how contraband was making its way into the prison.

126.    Sergeant Slade expressed that as a male, he felt uncomfortable watching female strip search videos.

127.    Sergeant Slade knew or should have known that the assignment was further suspicious because as a sergeant, he did not have a high enough rank to view these videos, and

because it was unclear how watching old strip search videos would help with the current contraband issues in the Jail.

128.    Commander Aber then volunteered himself to watch the female strip search videos and directed Sergeant Slade to watch the male strip search videos.

129.    Sergeant Slade told Lieutenant Harris about this incident with Commander Aber around 2021.

130.    Around 2023, Commander Aber approached Lieutenant Harris, and reiterated the conversation he had with Sergeant Slade.

131.    Commander Aber then asked Lieutenant Harris to pick up where Sergeant Slade left off and watch the male strip search videos.

132.    Like Sergeant Harris, Lieutenant Harris also told Commander Aber that he did not feel comfortable watching the female strip search videos.

133.    Commander Aber responded, "I'll continue to do that," meaning he'll continue to watch the female strip search videos.

134.    Sergeant Slade and Lieutenant Harris knew or should have known that Commander Aber was abusing his access to the strip search videos: (1) Sergeant Slade and Lieutenant Harris recognized that males should not be watching the female strip search videos; (2) they knew or should have known that Commander Aber was breaking protocol by assigning a sergeant to watch the videos, even though access to the videos was supposedly restricted to those with lieutenant rank or higher; (3) they knew or should have known that watching old strip search videos served no legitimate law enforcement function, as they would not help solve the current contraband issues in the Jail; (4) they knew or should have known about Commander Aber's history of sexual misconduct and mistreatment of female employees in the Jail; and (5)

they knew or should have known about Commander Aber's practice of openly breaching protocol with female inmates, visiting their cells, having them under his desk in his personal office with the door closed, and taking them on excursions out of the Jail.

135.    Despite that they knew, or should have known, that Commander Aber's handling and viewing of the female strip search videos was abnormal, Sergeant Slade and Lieutenant Harris did not report the abnormal viewing to a superior, and they did not intervene to stop Commander Aber from abusing his access to the videos.

## VII.    The Institutional Defendants enabled and failed to prevent Commander Aber's abuse.

136.    The Institutional Defendants bear responsibility for Commander Aber's abusive behavior because they failed to adequately train their staff, failed to monitor their staff, and/or engaged in deliberate indifference in a way that proximately caused harm to Plaintiffs and those similarly situated.

A.    Failure to Train.

137.     The Institutional Defendants failed to train their employees to monitor which Jail employees were accessing the evidence.com database and for what purpose.

138.    The Institutional Defendants could have programmed, but did not program, their evidence.com system to monitor suspicious behavior, or trigger automatic warnings when a user (like Commander Aber) is found to be:

    a.    Accessing the database at a high frequency;

    b.    Accessing a high volume of videos;

    c.    Rewatching a given video a high number of times;

    d.    Watching a video from a suspicious location;

    e.   Accessing the system at a suspicious time of day;

    f.   Accessing videos that did not reveal contraband or uses of force;

    g.   Accessing videos that were suspiciously old;

    h.   Accessing videos for a suspicious duration of time; or

    i.   Making the unjustified decision to preserve the footage outside the database using screenshots.

139.    The Institutional Defendants failed to train their employees to place meaningful limits on who could access the strip search videos on the evidence.com database and for what purpose.

140.    The Institutional Defendants could have placed, but did not place, restrictions on the evidence.com system that forbid users from:

    a.   Accessing the database at a high frequency;

    b.   Accessing a high volume of videos;

    c.   Rewatching a given video a high number of times;

    d.   Watching a video from a suspicious location;

    e.   Accessing the system at a suspicious time of day;

    f.   Accessing videos that did not reveal contraband or uses of force;

    g.   Accessing videos that were unreasonable old;

    h.   Accessing videos for a suspicious duration of time; or

    i.   Making the unjustified decision to preserve the footage outside the database using screenshots.

141.    The Institutional Defendants also failed to train their employees to report any suspicious access of the evidence.com database to superiors.

142.    This failure was a moving force behind Commander Aber's violations of the rights of Plaintiffs and those similarly situated. If the Institutional Defendants had properly trained their employees, they would have monitored Commander Aber's suspicious usage of the evidence.com database and reported that usage to a supervisor, such as the Sheriff or Undersheriff, who could then further investigate and intervene against Commander Aber's practice of abusing his access to the strip search videos for his sexual gratification.

143.    The Institutional Defendants knew or should have known that their failure to so train their employees might result in the violations raised in this lawsuit.

144.    As described in detail elsewhere in this Complaint, the Institutional Defendants knew that Commander Aber had a history of sexual misconduct against females, would regularly take female inmates on suspicious excursions out of the Jail, and would invite female inmates into his office or visit them in their quarters for his own sexual gratification.

145.    The Institutional Defendants therefore knew or should have known that Commander Aber tended to abuse his access to the female inmates for his sexual gratification, and he would therefore abuse his access to sexually explicit videos of these same inmates unless the Institutional Defendants trained employees to monitor and intercede against suspicious uses.

146.    Moreover, the risk associated with storing the strip search videos—sexually invasive videos of every woman booked at the Jail—was so great that the Institutional Defendants knew or should have known that the potential for abuse was high. Indeed, highly publicized cases from across the country have raised allegations that correctional guards

inappropriately watched nude inmates—either live or in person—in states such as Florida,[7] New Jersey,[8] and Michigan.[9]

147.    The Institutional Defendants therefore knew or should have known that, just as staff have done in multiple other correctional facilities, some of the Jail's staff would abuse their access to the strip search videos for their sexual gratification, and there was therefore a need to train employees to monitor, prevent, and report such abuse.

B.    Failure to Monitor.

148.    The Institutional Defendants failed to monitor which Jail employees were accessing the evidence.com database and for what purpose, and to intercede against suspicious use.

149.    This failure was a moving force behind Commander Aber's violations of the rights of Plaintiffs and those similarly situated. If the Institutional Defendants had properly monitored Commander Aber's usage of the evidence.com database, they would have revealed indications that he was abusing his access, including that he was:

      a.    Accessing the database at a high frequency;

      b.    Accessing a high volume of videos;

---

[7] Kristen Lambertsen, *Probe reveals Sullivan County corrections officer watched nude inmates on suicide watch*, NEWS CHANNEL 11 (Feb. 2, 2025), https://www.wjhl.com/news/probe-reveals-sullivan-county-corrections-officer-watched-nude-inmates-on-suicide-watch/.

[8] Jim Walsh, Ventor police officer accused of recording inmate naked, sharing video, CHERRY HILL COURIER-POST (Aug. 26, 2025), https://www.yahoo.com/news/articles/ventnor-police-officer-accused-recording-183342558.html.

[9] Nick Mordowanec, *Women Allegedly Filmed Nude By Guards While in Prison Speak Out*, Newsweek.com (Jun. 5, 2025), https://www.newsweek.com/female-inmates-lawsuit-sexual-abuse-whitmer-2080891.

    c.   Rewatching a given video a high number of times;

    d.   Watching a video from a suspicious location;

    e.   Accessing the system at a suspicious time of day;

    f.   Accessing videos that did not reveal contraband or uses of force;

    g.   Accessing videos that were unreasonably old;

    h.   Accessing videos for a suspicious duration of time; or

    i.   Making the unjustified decision to preserve the footage outside the database using

screenshots.

150.    The Institutional Defendants would have therefore learned that Commander Aber

was abusing his access to the strip search videos, and they would have been able to intercede

against him.

151.    The Institutional Defendants knew or should have known that their failure to

monitor access to the evidence.com database would result in the violations raised in this lawsuit.

152.    As described in detail elsewhere in this Complaint, the Institutional Defendants

knew that Commander Aber had a history of sexually inappropriate behavior towards employees

and inmates at the Jail.

153.    The Institutional Defendants therefore knew or should have known that

Commander Aber would abuse his access to sexually explicit videos of these same inmates if his

access was not monitored.

154.    Moreover, the risk associated with storing the strip search videos was so great

that the Institutional Defendants knew or should have known that the potential for abuse was

high.

155.    The Institutional Defendants therefore knew or should have known that, just as

staff have done in multiple other correctional facilities, some of the Jail's staff would abuse their access to the strip search videos for their sexual gratification if access to the evidence.com database was not monitored, and suspicious users investigated.

C.    Deliberate Indifference.

156.    The Institutional Defendants maintained at least three policies or customs with deliberate indifference to the rights of Plaintiffs and those similarly situated: (1) not limiting, monitoring, or auditing usage of the evidence.com database to track suspicious usage; (2) keeping strip search videos for no legitimate purpose, such as videos that did not capture contraband or uses of force; and (3) keeping strip search videos for a lengthy and unreasonable amount of time.

157.    The Institutional Defendants knew or should have known that these policies would proximately cause violations to the rights of Plaintiffs and those similarly situated.

158.    Again, the Institutional Defendants knew that Commander Aber would abuse his access to the strip search videos, given Commander Aber had a history of harassing the Jail's female employees and inmates, and because the potential for misuse of the strip search videos was so great that the Institutional Defendants knew or should have known that the risk of abuse was high.

159.    Despite this risk, the Institutional Defendants acted with deliberate indifference to the rights of Plaintiffs and those similarly situated.

160.    The Institutional Defendants did not monitor or audit usage of the evidence.com database to track suspicious usage, even though they knew that the potential for abuse was high and without monitoring there would be no way to catch and/or prevent abuse of the strip search videos.

161.    The Institutional Defendants kept strip search videos for which there was no legitimate purpose, such as those that did not capture contraband or uses of force, even though they knew that keeping these videos provided no value to law enforcement, and the risk that they would be accessed for improper purposes was high.

162.    The Institutional Defendants kept strip search videos for an unreasonable amount of time, even though they knew these videos provided no value to law enforcement, and the risk that they would be accessed for improper purposes was high.

163.    The Institutional Defendants' polices amount to deliberate indifference to the constitutional rights of inmates, enabling Commander Aber's systematic abuse to continue undetected and unaddressed.

164.    The Institutional Defendants' failures enabled Commander Aber to engage in his longstanding practice of abusing his access to the strip search videos for his own sexual gratification, in violation of the rights held by Plaintiffs and those similarly situated.

**VIII.    <u>An investigation finally brings Commander Aber's rampant abuse into the public eye.</u>**

165.    In 2024, at least fourteen La Plata County Sheriff's Office employees reported that for years, Commander Aber had been making inappropriate sexual remarks and unwanted sexual advances toward them. These are the women who reported that Commander Aber called one of them "sexy in a white trash way;" once described what erotica meant to him by recounting a dream in which he choked a woman ; and once told an employee that he sat next to her because of her cleavage, among other allegations.

166.    Female Jail staff members interviewed as part of the investigation said they refrained from formally reporting Aber's harassment because of fears of retaliation or that it

27

could impact their personal relationships.

167.    Upon information and belief, the fourteen female La Plata County Sheriff's Office employees that came forward with sexual harassment complaints against Commander Aber constitute a significant portion, if not a majority, of all the female employees of this disproportionately male-dominated workplace.

168.    Commander Aber's inappropriate behavior was therefore so widespread, so continuous, and so long in duration that the Institutional Defendants did know or should have known about it prior to the fourteen women's reports.

169.    An investigation into these allegations, as well as allegations of Commander Aber's sexual contact with inmates, was launched by the Sheriff's Office.

170.    In July 2024, Commander Aber resigned, hoping that his departure would terminate the investigation into his pervasive sexual misconduct. The investigation continued.

171.    In October of 2024, a Sheriff's deputy analyzed Commander Aber's work computers (a Surface Pro laptop and Dell Tower desktop), both of which were issued to him, accessible, and controlled by the Sheriff's Office.

172.    The October 2024 analysis revealed that Commander Aber was using his work computers to review the Facebook profiles of female inmates and deputies.

173.    Also downloaded to that work computer were screenshots depicting a female inmate's strip search from within the La Plata County Jail.

174.    Realizing that this screenshot was likely taken by Commander Aber as he reviewed strip search videos on evidence.com, the Sheriff's investigation proceeded to finally audit Commander Aber's evidence.com usage. This is the audit that revealed that Commander

Aber accessed evidence.com at least 3,166 times between February 2019 and July 2024.[10]

175.    The audit immediately returned every video still on the system that Commander Aber had accessed, many of them labeled "Strip Search."

176.    Institutional Defendants could have conducted a similar audit of Commander Aber's computer, which would have revealed his misconduct even earlier, but failed to do so.

177.    In January of 2025, the Durango Herald published an article entitled "Widespread sexual harassment found after resignation of La Plata County Jail Commander," which named Commander Aber and publicized the fact that Commander Aber was being investigated for invasion of privacy for sexual gratification.[11]

178.    On the same day that the Durango Herald article was published, Commander Aber reset and wiped his personal Apple iPad.

179.    Commander Aber likely wiped his personal iPad because the iPad contained additional evidence of his sexual misconduct against inmates in the La Plata County Jail as alleged in this Complaint.

## IX.    Other Sexual Misconduct by Jail Officials.

180.    Since filing the original Complaint, more reports of misconduct within the La Plata County Jail have come to light.

181.    In a separate lawsuit brought against Defendant Aber, *Delancy v. Aber*,

---

[10] Commander Aber likely viewed other strip search videos for his own sexual gratification, but the evidence.com system purged all videos prior to February 14, 2019, so it is not yet apparent when his abuse began, how many videos he watched, or how many women were affected.

[11] Reuben M. Schafir, *Widespread sexual harassment found after resignation of La Plata County Jail commander*, DURANGO HERALD (Jan. 22, 2025), https://www.durangoherald.com/articles/widespread-sexual-harassment-found-after-resignation-of-la-plata-county-jail-commander/.

2025CV30161 (Colo. Dist. Ct. 2025), a former inmate at the La Plata County Jail has alleged the

following:

> Plaintiff regularly observed Defendant Aber bring in candy, contraband like pens and hair scrunchies, and tobacco vapes, which he provided to female inmates in the La Plata County Jail. Upon information and belief, Defendant Aber provided these to either encourage female inmates to perform sexual favors for Defendant Aber, or to reward female inmates who had performed sexual favors for him in the past.
>
> …
>
> On one evening, Plaintiff's cell door was not fully closed when it was supposed to be closed during "lockdown." Defendant Aber approached Plaintiff and the other woman who was living in the cell and told them that if they "kiss for me" they "could get out of it." Plaintiff, not wanting to get in trouble, acquiesced to Defendant Aber's demand and kissed the woman who she shared a cell with while Defendant Aber leered on.
>
> …
>
> Another time, Plaintiff was caught was contraband in her cell during a cell-wide search. After the search was over, Defendant Aber visited Plaintiff alone at her cell. Defendant Aber told Plaintiff that if she "went like this" while pantomiming removing his shirt "this will go away." Plaintiff, afraid of Defendant Aber and not wanting to get in trouble, acquiesced to Defendant Aber's demand and removed her shirt and exposed herself for Defendant Aber.
>
> …
>
> Defendant Aber caught another woman with contraband in her cell. Defendant Aber visited the woman in her cell, whispered to her, and then went inside the woman's cell. Plaintiff witnessed this and asked the woman what happened. The woman told Plaintiff that Defendant Aber made her promise that she would perform oral sex on him in the future.
>
> …
>
> Upon information and belief, these are just a few of numerous examples of Defendant Aber soliciting sexual behavior and sexual contact from inmates in his custody. Upon information and belief, Defendant Aber regularly solicited inmates to perform sexual acts to each other, to reveal themselves to him, and ultimately to perform sexual acts to Defendant Aber.
>
> …
>
> Defendant Aber would make these demands both orally and through gestures such as by pantomiming removing his shirt when female

inmates like Plaintiff and the other class members were in his presence.

…

This behavior happened pervasively. Upon information and belief, Defendant Aber began this conduct, at the latest, shortly after being elevated to his position as Jail Commander (in 2018), and the conduct continued uninterrupted until he resigned from the sheriff's office (in July 2024).

182.    These alleged acts would have been observable to other staff at the La Plata County Jail, and therefore Institutional Defendants knew or should have known that Defendant Aber was abusing his power in the La Plata County Jail for his own sexual gratification.

183.    Institutional Defendants failures to investigate these incidents or punish those responsible are emblematic of their unlawful policies and deliberate indifference, including but not limited to their policy of failing to investigate instances of sexual misconduct, failing to punish those who commit sexual misconduct, and promoting those who are credibly accused of sexual misconduct.

## X.    <u>**Class Allegations.**</u>

184.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and (3) on behalf of themselves and all others similarly situated.

185.     The **Proposed Class** is defined as:

All individuals who were detained in the La Plata County Jail between February 14, 2019, and July 14, 2024, and whose strip search videos were accessed and viewed by Commander Aber through the evidence.com system.

186.     Plaintiffs also propose two subclasses:

187.    The **Pretrial Subclass**, defined as:

All individuals who were detained in the La Plata County Jail between February 14, 2019, and July 14, 2024, for purposes of pretrial detention, who were strip searched, and whose strip search

videos were accessed and viewed by Commander Aber through the evidence.com system.

188.    The **Sentence Subclass**, defined as:

All individuals who were detained in the La Plata County Jail between February 14, 2019, and July 14, 2024, for purposes of serving a criminal sentence, who were strip searched, and whose strip search videos were accessed and viewed by Commander Aber through the evidence.com system.

189.    Excluded from the Proposed Class and Subclasses are: Defendants' legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; all members of the Class who make a timely election to be excluded; and any judicial officer (and the immediate family and staff of said judicial officer) presiding over this action.

190.    Plaintiffs reserve the right to modify or amend the definition of the Proposed Class and Subclasses before the Court determines whether certification is appropriate.

191.    **Numerosity.** The class is so numerous that joinder of all members is impracticable. Currently available evidence indicates that the class includes at least 115 individuals whose strip search videos were accessed and viewed by Commander Aber, while the true number of victims cannot be confirmed without further discovery, it is likely higher.

192.    **Ascertainability.** Members of the Class are ascertainable through the records of Defendant La Plata County Sheriff's Office, including Jail detention records from February 14, 2019, to July 14, 2024, strip search videos on evidence.com, and other records.

193.    **Commonality.** There are questions of law and fact common to the class, including but not limited to:

a.   Whether Commander Aber accessed videos through the evidence.com system;

b.   How many times Commander Aber accessed videos on evidence.com during the

32

relevant time period;

    c.   Commander Aber's intent in accessing the videos on evidence.com;

    d.   Whether Commander Aber accessed videos during abnormal times or abnormal locations, evincing that he was viewing the videos for reasons other than legitimate law enforcement purposes;

    e.   Whether Commander Aber took screenshots of any videos and saved them on his personal electronic devices;

    f.   Whether Commander Aber deleted evidence from his personal electronic devices;

    g.   Whether Commander Aber's conduct violated the constitutional rights of class members, including their rights under the Fourth Amendment and Fourteenth Amendment of the U.S. Constitution;

    h.   Whether Commander Aber's tortious conduct violated the rights of class members under Colorado law;

    i.   Whether the Institutional Defendants' policies, customs, and practices enabled or facilitated Commander Aber's conduct;

    j.   Whether the Institutional Defendants failed to adequately supervise, train, or monitor personnel with access to sensitive evidence;

    k.   Whether there were any prior complaints, investigations, or internal reports identifying concerns about Commander Aber's behavior and sexual misconduct;

    l.   Whether the La Plata County Jail maintained a uniform policy regarding who could access body-camera footage and under what circumstances;

    m.   Whether the Institutional Defendants provided any training to staff regarding privacy rights and access to strip-search videos; and

n.  The appropriate measure of damages for the constitutional violations.

194.  **Typicality.** The claims of the named Plaintiffs are typical of the claims of the class members, as all class members were subjected to the same constitutional violations by Defendants. Plaintiffs are not subject to a unique defense that is likely to become a major focus of litigation. Plaintiffs and the other members of the Class have sustained economic injuries arising from Defendants' conduct, and the relief sought is common to each member of the Class.

195.  **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no conflicts of interest with other class members and Plaintiffs will prosecute the action vigorously on behalf of the class. Plaintiffs have retained competent counsel experienced in civil rights litigation and class actions. Indeed, the Court appointed undersigned as interim class counsel on January 21, 2026.

196.  **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the number of victims, allowing individual actions to proceed in lieu of a class action could run the risk of yielding inconsistent and conflicting adjudications. Treatment of common questions of law and fact in this action is a superior method to multiple individual actions. A class action will conserve the resources of the courts and the litigants, and it will promote consistency and efficiency of adjudication.

197.  **Predominance.** Questions of law and fact common to Plaintiffs and the Class exist that predominate over the questions affecting only individual members of the Class.

198.  **Class-wide relief.** The Institutional Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

XI.    **Plaintiffs could not have discovered Commander Aber's abuse until 2025.**

34

199.     With reasonable diligence, Plaintiffs and the Class Members could not have discovered that they had been injured by the tortious conduct of Defendants at the moment when Commander Aber abused access to footage of their strip searches, as only Defendants could tell how and when Commander Aber accessed that footage.

200.     Likewise, with reasonable diligence, Plaintiffs and the Class Members could not have discovered that they could have maintained legal claims against Defendants at the moment when Commander Aber abused access to footage of their strip searches, as only Defendants could tell how and when Commander Aber accessed that footage.

201.     Accordingly, Plaintiffs and the Class Members have all filed this lawsuit within the applicable statute(s) of limitations according to the date that they knew or could have known in the exercise of reasonable diligence that they had been injured by the tortious conduct of Defendants.

## XII.     **Plaintiffs provided notice of their claims under the CGIA on behalf of themselves and all others similarly situated.**

202.     On August 29, 2025, Plaintiffs sent a Notice of Claim under the CGIA to Sheryl Rodgers, the La Plata County Attorney. In that CGIA notice, Plaintiffs provided notice "on behalf of themselves and all others similarly situated" of their claims against Defendants, noting that "damages will likely exceed $1,000,000.00 for each claimant, and each similarly situated individual."

203.     Over 90 days have passed since Plaintiffs sent that CGIA notice.

204.     The CGIA therefore permits Plaintiffs to bring the tort claims added herein.

## FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Unreasonable Search and/or Seizure (Against Commander Aber)**

205.     Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

206.     The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to access these videos at his discretion.

207.     Commander Aber's conduct was possible only by virtue of his state-derived access and authority.

208.     Commander Aber therefore acted under color of state law when he abused his access to the strip search videos as described herein.

209.     The Fourth Amendment to the United States Constitution, incorporated against the States by the Fourteenth Amendment, prohibits government officials from conducting unreasonable searches or seizures.

210.     Commander Aber's viewing of strip search videos for sexual gratification constituted unreasonable seizures, searches, and/or invasions of inmates' reasonable expectations of privacy in violation of the Fourth and Fourteenth Amendments.

211.     Commander Aber's conduct also unreasonably expanded the scope of the strip searches in violation of the Fourth and Fourteenth Amendments.

212.     Commander Aber's conduct was objectively unreasonable and violated rights that were so clearly established that a reasonable officer in Commander Aber's position would have known that his conduct was unlawful.

213.     As a direct and proximate result of Commander Aber's violations, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

214.    Commander Aber's conduct involved reckless or callous indifference to the federally protected rights of others and was motivated by evil motive or intent, justifying an award of punitive damages.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Fourteenth Amendment Substantive Due Process
### (Against Commander Aber)

215.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

216.    The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to access these videos at his discretion.

217.    Commander Aber's conduct was possible only by virtue of his state-derived access and authority.

218.    Commander Aber therefore acted under color of state law when he abused his access to the strip search videos as described herein.

219.    The Fourteenth Amendment's guarantee of substantive due process forbids government officials from engaging in arbitrary and oppressive action and bars certain government actions regardless of the fairness of the procedures used to implement them.

220.    The Fourteenth Amendment protects fundamental rights including the right to be free from invasions of bodily integrity, human dignity, and sexual autonomy by government officials.

221.    Government conduct violates substantive due process when it shocks the conscience, violates fundamental notions of human dignity and decency, or acts with deliberate

indifference towards unlawful conditions of confinement.

222.     Commander Aber committed widespread, repeated, and continuous sexual exploitation of female inmates by forcing them to undergo strip searches, then viewing their strip search videos for sexual gratification, which amounts to conduct that "shocks the conscience" and violates substantive due process.

223.     Commander Aber was also subjectively aware of unlawful conditions, but he failed to cure those conditions, which amounts to deliberate indifference.

224.     Commander Aber's conduct was objectively unreasonable and violated rights that were so clearly established that a reasonable officer in Commander Aber's position would have known that his conduct was unlawful.

225.     As a direct and proximate result of Commander Aber's violations, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

226.     Commander Aber's conduct involved reckless or callous indifference to the federally protected rights of others and was motivated by evil motive or intent, justifying an award of punitive damages.

### **THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Eighth Amendment
(Against Commander Aber)**

227.     Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

228.     The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to

access these videos at his discretion.

229.    Commander Aber's conduct was possible only by virtue of his state-derived

access and authority.

230.    Commander Aber therefore acted under color of state law when he abused his

access to the strip search videos as described herein.

231.    The Eighth Amendment prohibits excessive force against inmates because the

unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by

the Eighth Amendment.

232.    The Eighth Amendment also prohibits officers from acting with deliberate

indifference to conditions that are sufficiently serious to implicate constitutional protections.

233.    Commander Aber committed widespread, repeated, and continuous sexual

exploitation of female inmates by forcing them to undergo strip searches, then viewing their strip

search videos for sexual gratification, which amounts to conduct that "shocks the conscience"

and violates substantive due process.

234.    Commander Aber was also subjectively aware of unlawful conditions, but he

failed to cure those conditions, thereby acting with deliberate indifference towards plaintiffs.

235.    Commander Aber's conduct was objectively unreasonable and violated rights that

were so clearly established that a reasonable officer in Commander Aber's position would have

known that his conduct was unlawful.

236.    As a direct and proximate result of Commander Aber's violations, Plaintiffs and

all others similarly situated have suffered and continue to suffer damages in an amount to be

determined at trial.

237.    Commander Aber's conduct involved reckless or callous indifference to the

federally protected rights of others and was motivated by evil motive or intent, justifying an award of punitive damages.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection
### (Against Commander Aber)

238.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

239.     The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to access these videos at his discretion.

240.    Commander Aber's conduct was possible only by virtue of his state-derived access and authority.

241.    Commander Aber therefore acted under color of state law when he abused his access to the strip search videos as described herein.

242.     The Equal Protection Clause of the Fourteenth Amendment forbids states from denying to any person the equal protection of the laws.

243.     The Equal Protection Clause prohibits government officials from treating individuals differently based on their sex, unless the policy is substantially related to an important government end.

244.     Commander Aber's conduct violated the Equal Protection Clause because he exclusively or near-exclusively intentionally targeted female inmates for sexual exploitation, while not visiting that same treatment on men.

245.     Commander Aber's discriminatory conduct was not substantially related to any

important government end.

246.     Commander Aber's conduct was objectively unreasonable and violated rights that were so clearly established that a reasonable officer in Commander Aber's position would have known that his conduct was unlawful.

247.     As a direct and proximate result of Commander Aber's violations, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

248.     Commander Aber's conduct involved reckless or callous indifference to the federally protected rights of others and was motivated by evil motive or intent, justifying an award of punitive damages.

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Unreasonable Search and/or Seizure - Failure to Intervene
### (Against Sergeant Slade and Lieutenant Harris)

249.     Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

250.     At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris were employed by the La Plata County Sheriff's Office, and were acting under color of state law.

251.     Sergeant Slade and Lieutenant Harris were aware or should have been aware that Commander Aber was violating, or was about to violate, the clearly established Fourth and Fourteenth Amendment rights of Plaintiffs and those similarly situated.

252.     Sergeant Slade and Lieutenant Harris in particular knew or should have known that Commander Aber was abusing his access to the strip search videos because he told them to watch the female strip search videos in breach of policy, volunteered himself to do so when they

declined, and had a history of breaching protocol by intimately associating with inmates off camera, out of public view.

253.    Sergeant Slade and Lieutenant Harris had the ability to intervene to prevent Commander Aber from abusing his access to the strip search videos in violation of the Fourth and Fourteenth Amendment rights of Plaintiffs and those similarly situated, including but not limited to (1) monitoring, auditing, or restricting his evidence.com access; or (2) reporting his abuse of access to superiors, other law enforcement officials, or prosecutors.

254.    Sergeant Slade and Lieutenant Harris did not intervene, despite having a realistic opportunity to intervene.

255.    As a direct and proximate result of the failure by Sergeant Slade and Lieutenant Harris to intervene against Commander Aber, Plaintiffs and those similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

**42 U.S.C. § 1983 - Fourteenth Amendment Substantive Due Process - Failure to Intervene
(Against Sergeant Slade and Lieutenant Harris)**

256.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

257.    At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris, were employed by the La Plata County Sheriff's Office, and were acting under color of state law.

258.    Sergeant Slade and Lieutenant Harris were aware or should have been aware that Commander Aber was violating, or was about to violate, the rights guaranteed to Plaintiffs and those similarly situated by the Fourteenth Amendment's due process clause, which prohibits Commander Aber from abusing his access to the strip search videos for his own sexual

gratification.

259.    Sergeant Slade and Lieutenant Harris in particular knew or should have known that Commander Aber was abusing his access to the strip search videos because he told them to watch the female strip search videos in breach of policy, volunteered himself to do in when they declined, and had a history of breaching protocol by intimately associating with inmates off camera, out of public view.

260.    Sergeant Slade and Lieutenant Harris had the ability to intervene to prevent Commander Aber's violation of the Fourteenth Amendment's Due Process Clause, including but not limited to (1) monitoring, auditing, or restricting his evidence.com access; or (2) reporting his abuse of access to superiors, other law enforcement officials, or prosecutors.

261.    Sergeant Slade and Lieutenant Harris did not intervene, despite having a realistic opportunity to intervene.

262.    As a direct and proximate result of the failure by Sergeant Slade and Lieutenant Harris to intervene against Commander Aber, Plaintiffs and those similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Eighth Amendment - Failure to Intervene
### (Against Sergeant Slade and Lieutenant Harris)

263.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

264.    At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris, were employed by the La Plata County Sheriff's Office, and were acting under color of state law.

265.    Sergeant Slade and Lieutenant Harris were aware or should have been aware that

Commander Aber was violating, or was about to violate, the rights guaranteed to Plaintiffs and those similarly situated by the Eighth Amendment prohibition on cruel and unusual punishment, which prohibits Commander Aber from abusing his access to the strip search videos for his own sexual gratification.

266.    Sergeant Slade and Lieutenant Harris in particular knew or should have known that Commander Aber was abusing his access to the strip search videos because he told them to watch the strip search videos in breach of policy, volunteered himself to do so when they declined, and had a history of breaching protocol by intimately associating with inmates off camera, out of public view.

267.    Sergeant Slade and Lieutenant Harris had the ability to intervene to prevent Commander Aber's violation of the Eighth Amendment, including but not limited to (1) monitoring, auditing, or restricting his evidence.com access; or (2) reporting his abuse of access to superiors, other law enforcement officials, or prosecutors.

268.    Sergeant Slade and Lieutenant Harris did not intervene, despite having a realistic opportunity to intervene.

269.    As a direct and proximate result of the failure by Sergeant Slade and Lieutenant Harris to intervene against Commander Aber, Plaintiffs and those similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

**42 U.S.C. § 1983 - Fourteenth Amendment Equal Protection - Failure to Intervene
(Against Sergeant Slade and Lieutenant Harris)**

270.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

271.     At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris acted under color of state law within the meaning of 42 U.S.C. § 1983.

272.     Sergeant Slade and Lieutenant Harris were aware or should have been aware that Commander Aber was violating, or was about to violate, the clearly established Fourteenth Amendment due process rights of Plaintiffs and all others similarly situated.

273.     Sergeant Slade and Lieutenant Harris in particular knew or should have known that Commander Aber was abusing his access to the strip search videos because he told them to watch the female strip search videos in breach of policy, volunteered himself to do in when they declined, and had a history of breaching protocol by intimately associating with inmates off camera, out of public view.

274.     Sergeant Slade and Lieutenant Harris had the ability to intervene to prevent Commander Aber's violation of the Fourteenth Amendment equal protection rights of Plaintiffs and all others similarly situated, including but not limited to (1) monitoring, auditing, or restricting his evidence.com access, or (2) reporting his abuse of access to superiors, other law enforcement officials, or prosecutors.

275.     Sergeant Slade and Lieutenant Harris did not intervene, despite having a realistic opportunity to intervene.

276.     As a direct and proximate result of Sergeant Slade's and Lieutenant Harris's failure to intervene, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

**42 U.S.C. § 1983 - *Monell* Liability for Failure to Supervise or Discipline**
**(Against Defendants Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)**

277.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

278.    The Sheriff had final policy making authority for the Jail.

279.    The federal constitutional violations described herein were caused by the policies, customs, and practices of the Institutional Defendants, which resulted in a serial sexual harasser being given a position of authority in the Jail, including but not limited to:

a.    A failure to supervise employees as it relates to intraoffice relations, in particular Commander Aber's mistreatment and harassment of female employees.

b.    A failure to discipline employees who sexually harass female employees.

c.    A failure to supervise employees as it relates to their relations to inmates, including but not limited to Commander Aber's decision to visit female inmates in their cells, invite female invites into his closed office, and take female inmates on excursions out of the Jail.

d.    A failure to discipline employees who visit female inmates in their cells, invite female invites into closed offices, or take female inmates on excursions out of the Jail.

e.    A failure to supervise employees' access to the evidence.com database, particularly the strip search videos.

f.    A failure to discipline employees who abuse their access to evidence.

280.    These policies, along with other violations that Plaintiffs and all others similarly situated allege they will discover during the course of this case, were the moving force behind

the constitutional violations described in this Complaint.

281.    Had the Institutional Defendants adequately supervised or disciplined Commander Aber, he would not have been in a position to engage in the conduct described herein.

282.    The Institutional Defendants had actual or constructive notice of the risk that their inadequate supervision and discipline would lead to constitutional violations, including through a pattern of prior sexual harassment by Commander Aber, yet they acted with deliberate indifference to that risk.

283.    The need for the Institutional Defendants to adequately supervise or discipline Commander Aber, given his authority and duties, was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that they can reasonably be said to have been deliberately indifferent to the need.

284.    As a direct and proximate result of the policies, customs, and practices of the Institutional Defendants, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

**42 U.S.C. § 1983 - *Monell* Liability for Policy or Custom**
**(Against Defendants Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)**

285.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

286.    The Sheriff had final policy making authority for the Jail.

287.    The federal constitutional violations described herein were caused by the deliberate indifference of the Institutional Defendants, which resulted in a serial sexual harasser

being given unfettered access to the strip search videos, including but not limited to:

    a.  Not monitoring who was accessing the strip search videos, and for what purpose;

    b.  Retaining strip search videos unnecessarily, such as videos of strip searches where no force was used and no contraband was revealed; and

    c.  Retaining strip search videos for an unreasonable amount of time, even though those videos had limited (if any) evidentiary value.

    d.  A policy or custom of not training Jail employees to report suspicious access to the strip search videos to other law enforcement entities, superiors, or prosecutors.

288.    The deliberate indifference of the Institutional Defendants, along with other violations that Plaintiffs and all others similarly situated allege they will discover during the course of this case, were the moving force behind the constitutional violations described in this Complaint.

289.    The Institutional Defendants had actual or constructive notice of the risk that their deliberate indifference would lead to constitutional violations, yet they consciously disregarded that risk.

290.    As a direct and proximate result of the policies, customs, and practices of the Institutional Defendants, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## **ELEVENTH CLAIM FOR RELIEF**

### 42 U.S.C. § 1983 - *Monell* Liability for Failure to Train
### (Against Defendants Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)

291.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

292.     The Sheriff had final policy making authority for the Jail.

293.     The federal constitutional violations described herein were caused by the policies, customs, and practices of the Institutional Defendants, which resulted in a serial sexual harasser being given unfettered access to the strip search videos, including but not limited to:

   a.   A policy or custom of not training Jail employees to monitor who accessed the strip search videos, and for what purpose;

   b.   A policy or custom of not training Jail employees to place limits on who could access the videos, how many times they could rewatch a video, how they could access older videos, what time of day they could access a video, where they could access a video from, and for what purpose; and

   c.   A policy or custom of not training Jail employees to report suspicious access to the strip search videos to other law enforcement entities, superiors, or prosecutors.

294.     These policies, along with other violations that Plaintiffs and all others similarly situated allege they will discover during the course of this case, were the moving force behind the constitutional violations described in this Complaint.

295.     Had the Institutional Defendants adequately trained Commander Aber and Jail employees, the conduct described herein would not have occurred.

296.     The Institutional Defendants had actual or constructive notice of the risk that their inadequate training would lead to constitutional violations, including through a pattern of prior sexual harassment by Commander Aber, yet they acted with deliberate indifference to that risk.

297.     The need for the Institutional Defendants to adequately train Commander Aber and Jail employees, given their authority and duties, was so obvious, and the inadequacy so

likely to result in the violation of constitutional rights, that they can reasonably be said to have been deliberately indifferent to the need.

298.    As a direct and proximate result of the policies, customs, and practices of the Institutional Defendants, Plaintiffs and all others similarly situated have suffered and continue to suffer damages in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF

**CRS § 13-21-131 - Violation of Article II, Section 7 of the Colorado Constitution - Unlawful Search**
**(Against Defendants Aber; Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)**

299.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

300.    At all times relevant to this Complaint, Commander Aber was a peace officer.

301.    The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to access these videos at his discretion.

302.    Commander Aber therefore acted under color of state law when he abused his access to the strip search videos as described herein.

303.    Article II, section 7 of the Colorado Constitution prohibits unreasonable searches and seizures.

304.     Plaintiffs and all others similarly situated had a personal right to be free from unreasonable searches under the Colorado Constitution.

305.    Commander Aber's conduct violated the right to be free from unreasonable searches and seizures, and the right to a reasonable expectation of privacy, guaranteed to Plaintiff

and those similarly situated by the Colorado Constitution.

306.     As a direct and proximate result of Commander Aber's actions, Plaintiffs and those similarly situated suffered damages in an amount to be determined at trial.

307.     Aber's conduct was willful and wanton, justifying punitive damages.

308.     Commander Aber's employer, the Institutional Defendants, are required to indemnify Commander Aber for any liability incurred pursuant to this Claim as Commander Aber's employers (the Institutional Defendants) were a causal factor in Commander Aber's violations through their action or inaction, and in any event must satisfy the judgment under C.R.S. § 13-21-131.

## THIRTEENTH CLAIM FOR RELIEF

**CRS § 13-21-131 - Violation of Article II, Section 25 of the Colorado Constitution - Substantive Due Process (Against Defendants Aber; Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)**

309.     Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

310.     At all times relevant to this Complaint, Commander Aber was a peace officer.

311.     The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to access these videos at his discretion.

312.     Commander Aber therefore acted under color of state law when he abused his access to the strip search videos as described herein.

313.     Article II, section 25 of the Colorado Constitution states that "No person shall be deprived of life, liberty or property, without due process of law."

314.     Plaintiffs and those similarly situated have fundamental rights protected by

Article II, section 25 of the Colorado Constitution, including but not limited to the rights to bodily autonomy, human dignity, and freedom from sexual exploitation by government officials.

315.    Government conduct violates Article II, section 25 of the Colorado Constitution when it "shocks the conscience" or violates fundamental notions of human dignity and decency.

316.    Commander Aber violated the fundamental rights of Plaintiffs and those similarly situated by forcing them to undergo strip searches then viewing their strip search videos for sexual gratification—actions which shock the conscience and violate Article II, section 25 of the Colorado Constitution.

317.    As a direct and proximate result of Commander Aber's actions, Plaintiffs and those similarly situated suffered damages in an amount to be determined at trial.

318.    Aber's conduct was willful and wanton, justifying punitive damages.

319.    Commander Aber's employer, the Institutional Defendants, are required to indemnify Commander Aber for any liability incurred pursuant to this Claim as Commander Aber's employers (the Institutional Defendants) were a causal factor in Commander Aber's violations through their action or inaction, and in any event must satisfy the judgment under C.R.S. § 13-21-131.

## FOURTEENTH CLAIM FOR RELIEF

**CRS § 13-21-131 - Violation of Article II, Section 20 of the Colorado Constitution - Cruel and Unusual Punishment (Against Defendants Aber; Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)**

320.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

321.    At all times relevant to this Complaint, Commander Aber was a peace officer.

322.    The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to access these videos at his discretion.

323.    Commander Aber therefore acted under color of state law when he abused his access to the strip search videos as described herein.

324.    Article II, section 20 of the Colorado Constitution states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

325.    Commander Aber violated the fundamental rights of Plaintiffs and those similarly situated by forcing them to undergo strip searches and viewing their strip search videos for sexual gratification—actions which amount to unreasonable uses of force and unlawful conditions of confinement under Article II, section 20 of the Colorado Constitution.

326.    As a direct and proximate result of Commander Aber's actions, Plaintiffs and those similarly situated suffered damages in an amount to be determined at trial.

327.    Commander Aber's conduct was willful and wanton, justifying punitive damages.

328.    Commander Aber's employer, the Institutional Defendants, are required to indemnify Commander Aber for any liability incurred pursuant to this Claim as Commander Aber's employers (the Institutional Defendants) were a causal factor in Commander Aber's violations through their action or inaction, and in any event must satisfy the judgment under C.R.S. § 13-21-131.

## FIFTEENTH CLAIM FOR RELIEF

**CRS § 13-21-131 - Violation of Article II, Section 29 of the Colorado Constitution -
Equal Protection
(Against Defendants Aber; Board of County Commissioners of the County of the County of
La Plata; Sheriff Smith in his official capacity)**

329.     Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

330.     At all times relevant to this Complaint, Commander Aber was a peace officer.

331.     The Institutional Defendants gave Commander Aber unfettered access to the evidence.com database, and therefore access to the strip search videos, and authorized him to access these videos at his discretion.

332.     Commander Aber therefore acted under color of state law when he abused his access to the strip search videos as described herein.

333.     Article II, section 29 of the Colorado Constitution provides "Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex."

334.     Commander Aber's systematic exploitation of female inmates through the viewing of their strip search videos for sexual gratification violated Article II, section 29 of the Colorado Constitution.

335.     As a direct and proximate result of Commander Aber's actions, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

336.     Aber's conduct was willful and wanton, justifying punitive damages.

337.     Commander Aber's employer, the Institutional Defendants, are required to indemnify Commander Aber for any liability incurred pursuant to this Claim as Commander Aber's employers (the Institutional Defendants) were a causal factor in Commander Aber's violations through their action or inaction, and in any event must satisfy the judgment under C.R.S. § 13-21-131.

## SIXTEENTH CLAIM FOR RELIEF

**CRS § 13-21-131 - Violation of Article II, Section 7 of the Colorado Constitution - Unlawful Search - Failure to Intervene**
**(Against Defendants Slade; Harris; Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)**

338.     Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

339.     At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris were peace officers and were acting under color of law.

340.     Sergeant Slade and Lieutenant Harris were aware that Commander Aber was violating, or was about to violate, the Colorado constitutional right of Plaintiffs and those similarly situated to be free from unreasonable searches.

341.     Sergeant Slade and Lieutenant Harris had the opportunity to intervene to prevent Commander Aber's violations.

342.     Sergeant Slade and Lieutenant Harris did not intervene against Commander Aber's violations.

343.     As a direct and proximate result of Sergeant Slade's and Lieutenant Harris's failure to intervene, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

344.     Sergeant Slade and Lieutenant Harris are not entitled to any sort of statutory limitation on liability, damages, or attorneys' fees liability for their actions and inactions.

345.     Sergeant Slade's and Lieutenant Harris's employers, the Institutional Defendants, are required to indemnify Sergeant Slade and Lieutenant Harris for any liability incurred pursuant to this Claim as their employers (the Institutional Defendants) were a causal factor in their violations through their action or inaction, and in any event must satisfy the judgment under

C.R.S. § 13-21-131.

## SEVENTEENTH CLAIM FOR RELIEF

**CRS § 13-21-131 - Violation of Article II, Section 25 of the Colorado Constitution -
Substantive Due Process - Failure to Intervene
(Against Defendants Slade; Harris; Board of County Commissioners of the County of the
County of La Plata; Sheriff Smith in his official capacity)**

346.     Plaintiffs and those similarly situated incorporate all preceding paragraphs as if
fully set forth herein.

347.      At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris
were peace officers and were acting under color of law.

348.     Sergeant Slade and Lieutenant Harris were aware that Commander Aber was
violating, or was about to violate, the Colorado constitutional substantive due process rights of
Plaintiffs and all others similarly situated.

349.     Sergeant Slade and Lieutenant Harris had the opportunity to intervene to prevent
Commander Aber's violations.

350.     Sergeant Slade and Lieutenant Harris did not intervene against Commander
Aber's violations.

351.     As a direct and proximate result of Sergeant Slade's and Lieutenant Harris's
failure to intervene, Plaintiffs and all others similarly situated suffered damages in an amount to
be determined at trial.

352.     Sergeant Slade and Lieutenant Harris are not entitled to any sort of statutory
limitation on liability, damages, or attorneys' fees liability for their actions and inactions.

353.     Sergeant Slade's and Lieutenant Harris's employers, the Institutional Defendants,
are required to indemnify Sergeant Slade and Lieutenant Harris for any liability incurred

pursuant to this Claim as their employers (the Institutional Defendants) were a causal factor in

their violations through their action or inaction, and in any event must satisfy the judgment under

C.R.S. § 13-21-131.

## EIGHTEENTH CLAIM FOR RELIEF

### CRS § 13-21-131 - Violation of Article II, Section 20 of the Colorado Constitution - Cruel and Unusual Punishment - Failure to Intervene
### (Against Defendants Slade; Harris; Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)

354.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

355.    At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris were peace officers and were acting under color of law.

356.    Sergeant Slade and Lieutenant Harris were aware that Commander Aber was violating, or was about to violate, the Colorado constitutional rights of Plaintiffs and all others similarly situated to be free from cruel and unusual punishment.

357.    Sergeant Slade and Lieutenant Harris had the opportunity to intervene to prevent Commander Aber's violations.

358.    Sergeant Slade and Lieutenant Harris did not intervene against Commander Aber's violations.

359.    As a direct and proximate result of Sergeant Slade's and Lieutenant Harris's failure to intervene, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

360.    Sergeant Slade and Lieutenant Harris are not entitled to any sort of statutory limitation on liability, damages, or attorneys' fees liability for their actions and inactions.

361.    Sergeant Slade's and Lieutenant Harris's employers, the Institutional Defendants, are required to indemnify Sergeant Slade and Lieutenant Harris for any liability incurred pursuant to this Claim as their employers (the Institutional Defendants) were a causal factor in their violations through their action or inaction, and in any event must satisfy the judgment under C.R.S. § 13-21-131.

### NINTEENTH CLAIM FOR RELIEF

**CRS § 13-21-131 - Violation of Article II, Section 29 of the Colorado Constitution - Equal Protection - Failure to Intervene**
**(Against Defendants Slade; Harris; Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his official capacity)**

362.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

363.    At all times relevant to this Complaint, Sergeant Slade and Lieutenant Harris were peace officers and were acting under color of law.

364.    Sergeant Slade and Lieutenant Harris were aware that Commander Aber was violating, or was about to violate, the Colorado constitutional equal protection rights of Plaintiffs and all others similarly situated.

365.    Sergeant Slade and Lieutenant Harris had the opportunity to intervene to prevent Commander Aber's violations.

366.    Sergeant Slade and Lieutenant Harris did not intervene against Commander Aber's violations.

367.    As a direct and proximate result of Sergeant Slade's and Lieutenant Harris's failure to intervene, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

368.    Sergeant Slade and Lieutenant Harris are not entitled to any sort of statutory

limitation on liability, damages, or attorneys' fees liability for their actions and inactions.

369.    Sergeant Slade's and Lieutenant Harris's employers, the Institutional Defendants,

are required to indemnify Sergeant Slade and Lieutenant Harris for any liability incurred

pursuant to this Claim as their employers (the Institutional Defendants) were a causal factor in

their violations through their action or inaction, and in any event must satisfy the judgment under

C.R.S. § 13-21-131.

### TWENTIETH CLAIM FOR RELIEF

**Invasion of Privacy – Intrusion Upon Seclusion**
**(Against Defendants Commander Aber; Board of County Commissioners of the County of**
**the County of La Plata; Sheriff Smith in his Official Capacity)**

370.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if

fully set forth herein.

371.    The CGIA waives immunity for torts committed in the operation of a jail, so long

as the claimant is not serving a sentence for a conviction of a crime. C.R.S. § 24-10-106.

372.    Commander Aber intentionally invaded the privacy of Plaintiffs and all those

similarly situated by causing them to undergo strip searches, causing those strip searches to be

recorded, and viewing those recordings for his own sexual gratification.

373.    The invasions described herein would be very offensive to a reasonable person.

374.    The Institutional Defendants are liable for Commander Aber's torts under the

doctrine of respondeat superior because Commander Aber committed the tort while acting within

the scope of his employment with the La Plata County Sheriff's Department; he was assigned by

the La Plata County Sheriff to manage the intake of inmates, searching of inmates, recording of

searches, management and access to recordings of those searches, and viewing of those

recordings.

375.    Alternatively, managing the intake of inmates, searching of inmates, recording of searches, management and access to recordings of those searches, and viewing of those recordings was customary in his role, trade, or business to accomplish the assigned work.

376.    Commander Aber was therefore acting as an agent or employee of La Plata County, and he was acting within the scope of his employment when he invaded the privacy of Plaintiffs and those similarly situated for his own sexual gratification.

377.    Institutional Defendants are therefore liable for Commander Aber's invasion of privacy under the doctrine of respondeat superior, and Institutional Defendants are vicariously liable for the damages suffered by Plaintiffs and all those similarly situated.

378.    Alternatively, Commander Aber acted willfully and/or wantonly when he invaded the privacy of Plaintiffs and all those similarly situated by causing them to undergo strip searches, causing those strip searches to be recorded, and viewing those recordings for his own sexual gratification, and is therefore personally liable for his torts.

### TWENTY-FIRST CLAIM FOR RELIEF

**Misappropriation of Likeness**
**(Against Defendants Commander Aber; Board of County Commissioners of the County of the County of La Plata; Sheriff Smith in his Official Capacity)**

379.    Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

380.    The CGIA waives immunity for torts committed in the operation of a jail, so long as the claimant is not serving a sentence for a conviction of a crime. C.R.S. § 24-10-106.

381.     Commander Aber intentionally misappropriated the likeness of Plaintiffs and all those similarly situated by causing them to undergo strip searches, causing those strip searches to

be recorded, and viewing those recordings for his own sexual gratification.

382.    This misappropriation was for Commander Aber's own benefit.

383.    This misappropriation caused Plaintiffs significant economic, mental, and emotional harm.

384.    The Institutional Defendants are liable for Commander Aber's torts under the doctrine of respondeat superior because Commander Aber committed the tort while acting within the scope of his employment with the La Plata County Sheriff's Department; he was assigned by the La Plata County Sheriff to manage the intake of inmates, searching of inmates, recording of searches, management and access to recordings of those searches, and viewing of those recordings.

385.    Alternatively, managing the intake of inmates, searching of inmates, recording of searches, management and access to recordings of those searches, and viewing of those recordings was customary in his role, trade, or business to accomplish the assigned work.

386.    Commander Aber was therefore acting as an agent or employee of La Plata County, and he was acting within the scope of his employment when he invaded the privacy of Plaintiffs and those similarly situated for his own sexual gratification.

387.    Institutional Defendants are therefore liable for Commander Aber's misappropriation of likeness under the doctrine of respondeat superior, and Institutional Defendants are vicariously liable for the damages suffered by Plaintiffs and all those similarly situated.

388.    Alternatively, Commander Aber acted willfully and/or wantonly when he misappropriated the likeness of Plaintiffs and all those similarly situated by causing them to undergo strip searches, causing those strip searches to be recorded, and viewing those recordings

for his own sexual gratification, and is therefore personally liable for his torts.

### TWENTY-SECOND CLAIM FOR RELIEF

**Negligent Operation of a Jail**
**(Against all Defendants)**

389.   Plaintiffs and those similarly situated incorporate all preceding paragraphs as if fully set forth herein.

390.   The CGIA waives immunity for torts committed in the operation of a jail, so long as the claimant is not serving a sentence for a conviction of a crime. C.R.S. § 24-10-106.

391.   The CGIA waives immunity for torts committed in the operation of a jail, so long as the claimant is not serving a sentence for a conviction of a crime. C.R.S. § 24-10-106.

392.    Commander Aber negligently invaded the privacy of Plaintiffs and all those similarly situated causing them to undergo strip searches, causing those strip searches to be recorded, and viewing those recordings for his own sexual gratification.

393.   Sergeant Slade and Lieutenant Harris similarly negligently permitted Commander Aber to force plaintiffs to undergo strip searches, causing those strip searches to be recorded, and viewing those recordings for his own sexual gratification, and/or negligently failed to intervene against the same.

394.   Institutional Defendants similarly negligently permitted Commander Aber to force plaintiffs to undergo strip searches, causing those strip searches to be recorded, and viewing those recordings for his own sexual gratification; Institutional Defendants negligently hired those responsible for these torts; and/or Institutional Defendants negligently failed to intervene against these torts.

395.   Defendants had the opportunity to intervene to prevent Commander Aber's

violations.

396.    Defendants did not intervene against Commander Aber's violations.

397.    As a direct and proximate result of Defendants' failures to intervene, Plaintiffs and all others similarly situated suffered damages in an amount to be determined at trial.

398.    The Institutional Defendants are liable for Commander Aber's, Seargent Slade's, and Lieutenant Harris's torts under the doctrine of respondeat superior because they committed the torts while acting within the scope of their employment with the La Plata County Sheriff's Department; and they were assigned by the La Plata County Sheriff to manage the intake of inmates, searching of inmates, recording of searches, management and access to recordings of those searches, and viewing of those recordings.

399.    Alternatively, managing the intake of inmates, searching of inmates, recording of searches, management and access to recordings of those searches, and viewing of those recordings was customary in their role, trade, or business to accomplish the assigned work.

400.    Commander Aber, Seargent Slade, and Lieutenant Harris were therefore acting as agents or employees of La Plata County, and they were acting within the scope of their employment.

401.    Institutional Defendants are therefore liable for Commander Aber's, Seargent Slade's, and Lieutenant Harris's torts under the doctrine of respondeat superior, and Institutional Defendants are vicariously liable for the damages suffered by Plaintiffs and all those similarly situated.

## DAMAGES

402.    As a direct and proximate result of Commander Aber's, Sergeant Slade's, and Lieutenant Harris's conduct, and the Institutional Defendants' enabling alleged herein, Plaintiffs

and class members have suffered severe and ongoing harm, including:

      a.   Violation of their fundamental constitutional rights to privacy, dignity, and freedom from unreasonable searches and seizures;

      b.   Severe emotional distress, humiliation, and psychological trauma from learning that their most intimate moments were repeatedly viewed for sexual gratification;

      c.   Loss of dignity and sense of personal security and autonomy;

      d.   Ongoing anxiety, depression, and post-traumatic stress related to the violation of their privacy and trust;

      e.   Fear and distrust of law enforcement and the criminal justice system; and

      f.   Damage to their reputation and standing in the community.

403.    The harms suffered by Plaintiffs and class members are ongoing and will continue into the future, requiring ongoing medical and psychological treatment and support.

404.    The conduct of Defendants was willful, wanton, involved reckless or callous indifference to the federally protected rights of others, or was motivated by evil motive or intent, justifying an award of punitive damages to deter similar conduct in the future and to vindicate the important constitutional rights that were violated.

## PRAYER FOR RELIEF

      **WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in favor of them and those similarly situated, and against each of the Defendants, and award them all relief allowed by law, including but not limited to the following:

405.    All appropriate relief at law and equity;

406.    Certification of the proposed class and subclasses and other class-wide relief;

407.    Declaratory relief and other appropriate equitable relief;

408.    Injunctive relief;

409.    Economic losses on all claims as allowed by law;

410.    Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

411.    Punitive damages on all claims allowed by law and in an amount to be determined at trial;

412.    Attorneys' fees and the costs associated with this action, including expert witness fees on all claims allowed by law;

413.    Indemnification and/or satisfaction of judgment pursuant to C.R.S. § 13-21-131;

414.    Pre- and post-judgment interest at the highest lawful rate; and

415.    Any further relief that this court deems just and proper, and any other relief as allowed by law.

**<u>PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.</u>**

Respectfully submitted this 20th day of February 2026.

/s/ Neil S. Sandhu
Felipe Bohnet-Gomez
Matthew Cron
Iris Halpern
Qusair Mohamedbhai
Siddhartha Rathod
Omeed M. Azmoudeh
Virginia Hill Butler
Neil Singh Sandhu
Katie Wiese Valiant
Crist Whitney
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence St., Suite #100
Denver, Colorado 80238
(303) 578-4400
fbg@rmlawyers.com
mc@rmlawyers.com
ih@rmlawyers.com
qm@rmlawyers.com
sr@rmlawyers.com
oa@rmlawyers.com
vb@rmlawyers.com
ns@rmlawyers.com
kw@rmlawyers.com
cw@rmlawyers.com

s/ John Baxter
John Baxter
JOHN BAXTER ATTORNEY AT LAW
1099 Main Ave., Suite 500
Durango, Colorado 81301
(970) 903-9578
baxterlaw@gmail.com

*Counsel for Plaintiffs*[12]

---

[12] Undersigned have also partnered with Rocky Mountain Victim Law Center to ensure that their clients have access to professional trauma care and to ensure that their advocacy is trauma informed.