IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02531-GPG-KAS
    (Consolidated for all purposes with Civil Action No. 25-cv-02763-GPG-KAS)

_____

Civil Action No. 25-cv-02531-GPG-KAS

TERRIANNE PAIGE HIEHLE, in her individual capacity and on behalf of all others similarly situated;
KATRINA LILE, in her individual capacity and on behalf of all others similarly situated; and
KIMBERLI LASHAWAY, in her individual capacity and on behalf of all others similarly situated,

        Plaintiffs,

v.

EDWARD ABER, in his individual capacity and official capacity as Jail Commander of the La Plata County Jail;
LA PLATA COUNTY, COLORADO;
LA PLATA COUNTY SHERIFF'S OFFICE;
SEAN SMITH, in his individual capacity and official capacity as Sheriff of La Plata County;
MICHAEL SLADE, in his individual capacity;
JACOB HARRIS, in his individual capacity; and
JOHN/JANE DOES #1-10, in their individual capacities,

        Defendants.

_____

Civil Action No. 25-cv-02763-GPG-KAS

C.B.;
R.C.;
J.E.;
S.H.;
A.H.;
A.H.;
M.J.;
J.L.;

1

M.N.;
E.P.;
S.R.;
M.S.;
A.S.;
N.T.;
K.T.;
R.W.;
I.W.; and
J.W.,

      Plaintiffs, individually and on behalf of all others similarly situated,

v.

EDWARD ABER, in his individual and official capacity as Jail Commander of
the La Plata County Jail;
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LA PLATA;
JACOB HARRIS, in his individual capacity;
MICHAEL SLADE, in his individual capacity; and
SEAN SMITH, in his official capacity as Sheriff of La Plata County,

      Defendants.

_____

**LA PLATA COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**
_____

Edward Aber allegedly committed criminal, hidden, and personal acts. Plaintiffs nonetheless seek to hold the La Plata County Board of County Commissioners, Sean Smith in his official capacity ("La Plata Entities"), Michael Slade, and Jacob Harris (collectively, "La Plata Defendants") liable—not because they authorized, caused, knew of, or ignored a known pattern of similar abuse, but because they supposedly should have inferred Aber's secret purpose. That is not enough. Jails may preserve strip-search footage for legitimate penological reasons, and Aber's stated reason for reviewing videos did not alert Slade or Harris that he was abusing access for sexual gratification. Nor can La Plata Entities be liable for one employee's concealed misconduct absent a causal policy or notice making it highly predictable. The Court should dismiss Plaintiffs' claims against La Plata Defendants with prejudice.

## REPLY ARGUMENT

**A.    Plaintiffs' response does not cure the defects in their constitutional claims against Sergeant Slade and Lieutenant Harris.**

    **1.    The Court should reject Plaintiffs' attempt to apply ELEIA retroactively.**

Plaintiffs' ELEIA claims against Sergeant Slade fail because the statute did not exist when Slade allegedly failed to stop Commander Aber from abusing access to strip-search videos. Plaintiffs do not dispute that ELEIA was enacted after Slade's alleged 2018 omission. Nor do they dispute that ELEIA applies prospectively only. (Dkt. No. 111, p. 14.) *Casper v. Olson*, No. 21CA0075, 2022 WL 22924503, at *5-6 (Colo. App. Apr. 7, 2022). Plaintiffs instead recast Slade's alleged 2018 omission as a continuing violation. But Colorado limits that doctrine to employment-discrimination claims.

1

*Reynolds v. Great N. Ins. Co.*, 2023 COA 77, ¶¶ 10, 20. Plaintiffs cite no authority extending the doctrine to ELEIA claims, much less using it to impose liability for conduct predating ELEIA's enactment. ELEIA does not apply to Slade's conduct.

**2.    Plaintiffs do not show a violation of clearly established law sufficient to overcome qualified immunity.**

Plaintiffs did not meet their heavy burden to show clearly established law put Sergeant Slade in 2018 or Lieutenant Harris in 2021 or 2023 on notice that they had a constitutional obligation to intervene under the circumstances alleged here. "Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent *particularized to the case* at issue exists." *Sanchez v. Guzman*, 105 F.4th 1285, 1293 (10th Cir. 2024). Precedent that encompasses "materially similar conduct" or applies "with obvious clarity to the conduct at issue" is required to place the constitutional question "beyond debate." *Id.* at 1292-93.

Plaintiffs identify three cases: *Fogarty v. Gallegos*, *Mick v. Brewer*, and *Bledsoe v. Carreno*. *Fogarty* and *Mick* clearly establish only a duty to intervene in excessive-force cases. 523 F.3d 1147, 1163 (10th Cir. 2008); 76 F.3d 1127, 1136 (10th Cir. 1996). *Bledsoe* recognized a duty to intervene outside an excessive force claim for the first time in 2022 in the context of false prosecutions, but held the duty not clearly established. 53 F.4th 589, 617 (10th Cir. 2022); *see also Shaw v. Schulte*, 36 F.4th 1006, 1020-21 (10th Cir. 2022) (holding duty to intervene outside excessive force not clearly established). And, regardless, Plaintiffs cannot point to any authority holding a clearly established duty to intervene when a commander gives a penologically sound purpose for viewing strip-search footage. *See Griffith v. El Paso County*, 129 F.4th 790,

4906-9525-5730, v. 3

829 (10th Cir. 2025) (undergoing fact-specific inquiry regarding strip-search authority and ultimate holding particular search not clearly established).

Plaintiffs' fallback arguments do not change the result. They first attempt to recast Slade's and Harris's alleged omissions as continuing violations. But a continuing violation applies when the plaintiff's claim seeks redress for injuries resulting from a series of "separate acts that collectively constitute one unlawful act," "not by continual ill effects" from a single discrete act. *Herrera v. City of Española*, 32 F.4th 980, 993 (10th Cir. 2022). Plaintiffs only allege discrete failures to intervene and, at best, the passive effects resulting from those omissions. *See, e.g.*, *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1035 (6th Cir. 2025) ("Passive inaction does not support a continuing violation."); *McGroarty v. Swearingen*, 977 F.3d 1302, 1307-08 (11th Cir. 2020) (display in offender registry caused continued harm, not a continuing violation).

They next invoke the obvious-case exception—in which more general statements of the law might suffice. This line of argument has "fallen out of favor, yielding to more robust qualified immunity." *N.E.L. v. Douglas Cnty.*, 740 F. App'x 920, 928 n.18 (10th Cir. 2018) (unpublished) (citing *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016) and *Mullenix v. Luna*, 577 U.S. 7, 11, 18 (2015)). Regardless, the Tenth Circuit itself disagreed in *Bledsoe* over whether the duty to intervene extends beyond excessive force. *Compare Bledsoe*, 53 F.4th at 617, *with id.* at 619 (Eid, J., dissenting). If that duty was not obvious to the Tenth Circuit, it was not obvious to Slade or Harris.

Nor do Plaintiffs allege the kind of egregious, self-evident misconduct required to meet the exception. *Hope v. Pelzer* involved officers handcuffing an inmate shirtless to

3

a hitching post in the sun and denying him water for seven hours. 536 U.S. 730, 734-35 (2002). *Taylor v. Riojas* involved cells covered in "massive amounts of feces," raw sewage, and freezing conditions. 592 U.S. 7, 8 (2020). The failure-to-intervene cases Plaintiffs cite involved direct participation in coercive investigative abuses, including forced false witness statements and withheld exculpatory evidence, that resulted in the plaintiffs' false convictions. *See Atchison v. City of Tulsa*, No. 21-cv-286-JDR-SH, 2025 WL 2444597, at *1, *11 (N.D. Okla. Aug. 25, 2025); *Warren v. Unified Gov't of Wyandotte Cnty. & Kan. City*, No. 25-2625-JAR-RES, 2026 WL 1213830, at *18-19 (D. Kan. May 4, 2026). Plaintiffs allege only that Aber gave Slade and Harris a contraband-related reason for reviewing intake strip-search footage and that both officers declined to watch the footage. (Dkt. No. 111, p. 4.) Those allegations are a far cry from the egregious conduct required to meet the obvious-case exception. For these reasons, Plaintiffs have not met their burden and Slade and Harris are qualifiedly immune.

> **3.    Plaintiffs do not plausibly allege that Sergeant Slade or Lieutenant Harris actually knew of a constitutional violation.**

Plaintiffs fare no better on the merits. They do not dispute that *Bledsoe* governs their state and federal claims or that they must allege actual knowledge, not inferred knowledge.[1] Plaintiffs argue only that Sergeant Slade and Lieutenant Harris actually knew that Commander Aber unconstitutionally viewed inmate strip-search videos. (Dkt. No. 111, p. 3.) But to plead actual knowledge, Plaintiffs must plausibly allege that Slade and Harris "bec[a]me aware" of Aber's constitutional violations. *See Intel Corp. Inv.*

---

[1] Plaintiffs likewise do not dispute that their substantive due process claims are unavailable under *Bledsoe*. (*See* Dkt. No. 101, p. 8 n.4.)

4

*Policy Comm. v. Sulyma*, 589 U.S. 178, 186-87 (2020) (defining actual knowledge as "real knowledge as distinguished from presumed knowledge or knowledge imputed to one"). Plaintiffs do not allege real knowledge. They allege Slade saw Aber invite inmates into his office, Slade spoke with Aber in 2018 about watching strip-search footage to identify contraband entering the jail, and Aber offered to watch the female footage. (Dkt. No. 84, ¶¶ 124-28.) As to Harris, they allege Slade told him about the conversation in 2021, and Aber asked Harris to watch strip-search footage for the same contraband-related reason in 2023. (*Id*. ¶¶ 129-33.) None of these allegations plausibly allege that Slade or Harris actually knew of Aber's non-penological strip-search viewing.

In reality, Plaintiffs stray from the actual knowledge standard and ask for this Court to presume Harris and Slade were aware of Aber's misconduct because they could have "[made] the inference" Aber viewed the videos for an improper purpose. (Dkt. No. 111, p. 9.) But as conceded by Plaintiffs, inferred knowledge cannot support a failure to intervene claim. *See Randall v. Prince George Cnty.*, 302 F.3d 188, 204-05 (4th Cir. 2002) ("mere inference" is not a proper basis to impute knowledge of constitutional violation). (*See also* Dkt. No. 101, pp. 8-13 (discussing failure-to-intervene case law, none of which found a failure to intervene based on inferred-knowledge).)[2]

Even if inferred-knowledge could replace actual knowledge, Plaintiffs' theory depends on a series of impermissible stacked inferences. They ask the Court to infer

---

[2] *McKenzie*, *Mohamed*, and *Carey* do not help Plaintiffs. (Dkt. 111, p. 8.) *McKenzie* and *Mohamed* involved defendants present for the alleged violations. No. 21-cv-00833-PAB-STV, 2023 WL 5488465, at *25 (D. Colo. July 21, 2023); No. 20-cv-02516-RBJ-NYW, 2022 WL 523440, at *21 (D. Colo. Feb. 22, 2022). *Carey* dismissed a failure-to-intervene claim because the plaintiff did not allege presence or knowledge. No. 1:19-cv-02073-RM-STV, 2020 WL 3620324, at *10 (D. Colo. Mar. 18, 2020).

5

Slade knew Aber's hidden purpose because Slade saw Aber invite inmates into his office. (Dkt. No. 111, p. 4.) As to Harris, they ask the Court to infer that Slade conveyed some knowledge of Aber's hidden purpose. (*Id*.) Not only is this the type of inference layered on inference that courts refuse to consider, *see Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019), but the inference necessary to connect what Slade and Harris may have known and Aber's viewing of the videos for pornographic purposes are not plausible under Plaintiffs' own reasoning: Plaintiffs do not plead how Slade or Harris knew that Aber's purported penological reason for viewing the footage was false and that his purpose was sexual. (Dkt. No. 84, ¶¶ 127, 134.) *See Crane v. Utah Dep't of Corr*., 15 F.4th 1296, 1325-26 (10th Cir. 2021) (Bacharach, J., concurring) (determining no knowledge of suicide risk where defendants were not told this information, and did not review records or observe behavior making risk apparent); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566-67 (2007) (inference implausible where action consistent with non-tortious conduct).

In *Whitson*, for example, the court refused to infer knowledge on an even stronger record. There, a deputy saw an officer load an inmate into his personal car—against jail policy—dressed in street clothes and saw the car at the officer's house shortly after. No. 18-cv-02076-RBJ, 2020 WL 13660757, at \*1, 7-8 (D. Colo. Apr. 17, 2020), *rev'd on other grounds*, 106 F.4th 1063 (10th Cir. 2024). The court nonetheless dismissed the failure to intervene claim because the deputy did not observe the sexual assault, was not present for it, was not told of the sheriff's plans, and did not know the sheriff "did such things." *Id.* at \*7-9. Plaintiffs allege even less here. Because of his rank,

6

Aber was permitted access to the videos. (Dkt. No. 84, ¶ 96.) Plaintiffs do not allege that either Slade or Harris observed Aber's unconstitutional conduct, were present for Aber's viewing of any videos such that they might draw any conclusions about his viewing the footage, were told his hidden purpose, or actually knew he was misusing the footage.

Plaintiffs retreat to argue that *any* cross-gender viewing of intake strip-search videos absent exigent circumstances is unlawful. (Dkt. No. 111, pp. 8-9.) They are wrong. Jails have legitimate interests in strip-searching inmates at intake and recording the searches. *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 330 (2012) (recognizing jails' "significant interest" in intake searches); *Jones v. Anderson*, 116 F.4th 669, 677-79 (7th Cir. 2024) (recognizing legitimate penological purpose for recording strip-search). Viewing that footage for penological reasons, even of the opposite gender, does not violate the Constitution. *See Jones v. City & Cnty. of Denver*, No. 21-cv-00728-RMR-NRN, 2022 WL 20380587, at *6 (D. Colo. Apr. 12, 2022); *Robinson v. Boulier*, 121 F.3d 713, 1997 WL 546036 (8th Cir. 1997) (table decision); *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990).

*Griffith*, *Griffin v. Ortiz*, or *Vo v. Gilmore* do not say otherwise. *Griffith* rejected any per se rule that cross-gender intake strip searches violate the Constitution and found a violation only because a male conducting the search served no penological purpose where the inmate had gender dysphoria, requested a female officer, and a female officer was available. 129 F.4th at 826-29. *Griffin* found that "the mere recording of the strip search" did not violate the Fourth Amendment, even with cross-gender viewing. 22-cv-02438-NYW-NRN, 2025 WL 1071361, at *2 (D. Colo. Jan. 6, 2025). And

7

*Vo* found that recording strip searches served legitimate penological interests; its discussion of opposite-gender viewing showed only that such viewing may add privacy concerns that must be balanced with penological purposes. No. 18-1364, 2020 WL 10052602, at \*7-8 (W.D. Pa. Nov. 2, 2020)*.* As a result, Plaintiffs do not plead plausible claims for a failure to intervene under federal or state law against Slade or Harris.

**B.     Plaintiffs cannot adequately allege municipal liability.**

**1.     La Plata Board of County Commissioners is not a proper defendant.**

At the outset, Plaintiffs' claims against the La Plata Board of County Commissioners are improper. Plaintiffs make no effort to distinguish the acts between Sheriff Smith and the Board of County Commissioners, they do not allege that the Board oversaw jail employee's conduct or made policy for the jail, and, to the contrary, they concede that Sheriff Smith is the proper defendant as the final policymaker. *See* § 30-10-511, C.R.S. (*See also* Dkt. 84, ¶ 286 ("[T]he Sheriff had final policy making authority over the jail."). Thus, "any allegations regarding the conduct of [the sheriff] in managing the jail and any resulting harm to the plaintiffs are insufficient to state a claim against the [La Plata Board of County Commissioners]." *Lockhart v. Van Beek*, 24-cv-00991-PAB-TPO, 2025 WL 661789, at \*7 (D. Colo. Feb. 28, 2025); *see also Est. of Began v. Lake Cnty.*, 2008 WL 2690702, at \*6 (D. Colo. July 3, 2008) ("[S]heriff, not the board of commissioners, is the legal entity responsible for tortious behavior by a deputy sheriff."). Plaintiffs argue that § 30-11-105, C.R.S. requires them to name the board. (Dkt. 111, p. 30.) But § 30-11-105 only requires that a plaintiff directly suing a county name the board of county commissioners. It does not supersede authority requiring

claims based on jail policies be brought against the sheriff. *E.g.*, *Saxena v. Corinth*, No. 1:22-cv-01733-DDD-SBP, 2024 WL 6475711, at *16 (D. Colo. Apr. 3, 2024).

### 2.    Plaintiffs do not plead municipal action, notice, or causation.

Plaintiffs divide their *Monell* claim into several parts—policy, custom, and failure to train, supervise, monitor, and adopt safeguards. The labels they ascribe do not change the core premise applicable to each theory: that the La Plata County Sheriff's Office should have done more to prevent Commander Aber's concealed misuse of strip-search footage. That "policy of inaction" theory requires Plaintiffs to meet a high burden of pleading the Sheriff's Office made a deliberate choice not to act despite notice that its inaction was highly likely to cause constitutional violations, and this deliberate choice directly caused Plaintiffs' injuries. *Murphy v. City of Tulsa*, 950 F.3d 641, 648 (10th Cir. 2019); *Waller*, 932 F.3d at 1284 ("[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."). Plaintiffs do not meet their burden.

### a.    Plaintiffs identify no facially unconstitutional policy or widespread custom.

Plaintiffs first characterize the Sheriff's Office's alleged access policy or custom of "unfettered" access to strip-search videos as facially unconstitutional. But they don't identify any policy permitting "unfettered" access. The only policy they do identify limits access to deputies ranked lieutenant or higher. Nor do they plead a widespread custom. They allege only one person—Commander Aber—misused strip-search footage. One incident "fall[s] far short of plausibly alleging a widespread practice . . . much less a practice so permanent and well settled as to constitute a custom or usage with the force

9

of law." *Waller*, 932 F.3d at 1290. The limited-access policy is not facially unconstitutional either. A policy is facially unconstitutional if its straightforward enforcement directs employees to inflict constitutional injuries. *Thao v. Grady Cnty. Crim. Justice Auth*., 159 F.4th 1214, 1228 (10th Cir. 2025). No policy, and certainly not the access policy alleged, directed Aber to view strip-search footage for his own personal sexual gratification. And, as previously explained, viewing strip-search footage—even cross-gender—is not per se unlawful. (*See supra* at 7.) Plaintiffs' theory is that the Sheriff's Office should have adopted more safeguards beyond what existed to prevent Aber's misuse. (Dkt. No. 111, p. 20.) That theory fails for lack of notice and causation.

### b.    Plaintiffs cannot plead notice making Aber's misconduct highly predictable.

Municipal inaction, whether it be failure to supervise, train, monitor, or enact additional policies, amounts to a constitutional decision only when the municipality has notice its inaction will cause constitutional violations—usually through a pattern of similar violations. *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). Plaintiffs allege no such pattern. They do not allege prior instances in which any deputy misused strip-search footage, accessed evidence.com for a non-penological purpose, or used retained footage to violate inmate privacy. Nor do they allege prior complaints, investigations, or grievances involving comparable misuse.

Plaintiffs cannot manufacture notice from unrelated allegations about other deputies, later complaints, or Aber's background. Allegations about other deputies do not show notice that Aber would misuse strip-search footage in the specific way alleged

10

here. *See Waller*, 932 F.3d at 1286 (requiring prior conduct similar to the alleged violation). The 2024 complaints that prompted Aber's investigation and prosecution cannot provide prior notice either. *Id*. ("Incidents that occurred subsequent to the incident at issue" cannot establish notice). And Plaintiffs' attempt to fault the Sheriff's Office for failing to scrutinize Aber's background more closely "poses the greatest risk" of respondeat superior liability and requires allegations that Aber was "highly likely to inflict the particular injury suffered." *Barney*, 143 F.3d at 1308 (emphasis in original). Even crediting Plaintiffs' allegation that Aber had been "reported" at some undefined time decades before this incident for sexual harassment (Dkt. No. 84, ¶ 53), Plaintiffs do not allege the outcome of that allegation or how it made Aber's particular conduct here highly predictable. *Barney*, 143 F.3d at 1308 ("[W]hen reviewing hiring decisions, courts . . . carefully test the link between the . . . hiring decision and the particular injury.").

Plaintiffs' single-incident theory likewise fails. That theory applies in narrow circumstances where the need for training or safeguards is so obvious that the failure to act makes constitutional violations highly predictable. *Connick*, 563 U.S. at 67; *Packard v. City & Cnty. of Denver*, 173 F.4th 1247, 1263 (10th Cir. 2026). To meet their high burden, Plaintiffs have to plausibly allege that La Plata deputies do not know that viewing female inmate strip-search videos for their own personal sexual gratification violates the Constitution absent policy or training. *Connick*, 563 U.S. at 67. But Plaintiffs do not allege that Aber misunderstood the constitutional limits on using strip-search footage or made a difficult judgment call in a gray area—he concealed his misconduct and viewed footage for sexual gratification despite its obvious impropriety. Specific

11

training is not needed to tell officials not to commit obvious—and criminal—misconduct. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 774 (10th Cir. 2013) (specific training unnecessary for jailer to know sexual assault is wrong). And contrary to Plaintiffs' arguments otherwise, "[e]ven an untrained law enforcement officer should have been well aware" that viewing inmate footage for sexual purposes was impermissible. *Waller*, 932 F.3d at 1288.

Nor does the Prison Rape Elimination Act ("PREA") provide the Sheriff's Office notice of specific deficiencies in their policies or training that made violations of constitutional rights highly predictable. PREA does not establish a constitutional standard. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 384 (7th Cir. 2020). It does not provide notice that this facility was at risk of violating the Constitution in the specific way alleged here—through a jail commander's secret misuse of strip-search footage for sexual gratification. *See Thomas v. Dart*, 39 F.4th 835, 845-46 (7th Cir. 2022) ("broad and generalized legislative findings" in PREA cannot establish a specific risk).[3]

Plaintiffs' reliance on *J.K.J. v. Polk County* does not change the result. There, the county had notice of similar sexual misconduct through an investigation and a culture of abuse yet did nothing. 960 F.3d at 371-72, 382. After a five-day jury trial, a jury found the county liable, and the county sought to overturn the jury's decision. *Id.* at 375-77. The Seventh Circuit upheld the verdict, because the county knew the precise type of

---

[3] Plaintiffs' theory that any noncompliance with PREA "demonstrate[s] indifference to the [constitutional] rights of its people" upends deliberate indifference as an element to all claims which tangentially touch on PREA's subject matter and creates a cause of action where Congress expressly refused to do. *See Haffner v. Geary Cnty. Sheriff's Dep't*, No. 18-3247-SAC, 2019 WL 1367662, at *4 (D. Kan. Mar. 26, 2019).

12

sexual misconduct occurring at the jail through the investigation and knew that sexual misconduct had become a culture among the jail staff, yet failed to do anything. *Id.* at 382. Here, Plaintiffs do not plead that the Sheriff's Office knew of Aber's secret misuse. To the contrary, when the Sheriff's Office learned of Aber's workplace harassment it immediately investigated, resulting in the discovery of his misconduct and his prosecution. (Dkt. No. 84 ¶¶ 169-75, 177.) Aber's alleged acts, "no matter how egregious," cannot themselves show municipal fault. *Waller*, 932 F.3d at 1290-91.

### c.    Plaintiffs fail to plead a direct causal link between the Sheriff's Office's conduct and Aber's misconduct.

Plaintiffs also fail to plead causation. To establish *Monell* causation, Plaintiffs must "allege more than that an employee violated their constitutional rights." *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 934 (10th Cir. 2025). They must plead the municipality's "deliberate conduct was the moving force behind the injury alleged," meaning "a direct causal link" exists "between the municipal action and the deprivation of federal rights." *Id*. at 934-35. Plaintiffs do not identify that link. They argue only that the Sheriff's Office was the "moving force" because its policies "necessarily cause[d] men to view women's strip searches without a penological purpose," and because its policies and supervision "caused" the violations. (Dkt. No. 111, pp. 20, 23.) That is conclusory and circular. As in *Lee*, Plaintiffs "don't explain how [the alleged policies] directly caused [Aber] to [view strip-search footage for personal gratification]." 135 F.4th at 935. Nor do they explain how additional policies or training would have prevented Aber from engaging in his criminal misconduct. *See Ireland v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1222 (D. Colo. 2002) (rejecting claim that injuries could

13

have been avoided with different policies or training because two shooters, not any lack of policies or training, was the moving force behind injuries).

Relatedly, *City of Canton v. Harris* requires the identified deficiency to be "closely related to the ultimate injury." 489 U.S. 378, 391 (1989). Plaintiffs do not make that connection. They criticize the Sheriff's Office's policies and training but fail to identify a deficiency that would have prevented Aber's misconduct. Holding the Sheriff's Office liable absent any specific deficiency here would open "unprecedented liability" because "[i]n virtually every instance" of employee misconduct, a plaintiff could point to something the municipality "could have done" to prevent it. *Id*. at 392.

**C.      Plaintiffs do not plead a viable basis for state-law tort liability.**

Plaintiffs' common-law tort claims fail for four independent reasons. First, Aber acted outside the scope of his employment. An employee acts within the scope of employment when performing assigned work or conduct incidental to that work. *Destefano v. Grabrian*, 763 P.2d 275, 287 (Colo. 1988). Intentional torts generally fall outside that scope because they do not further the employer's business. *Keller v. Koca*, 111 P.3d 445, 448 n.2 (Colo. 2005). Aber's viewing female inmates' strip-search footage for personal sexual gratification did not further any jail function. And Plaintiffs' parade-of-horribles argument misses the point: the question is not Aber's intent in the abstract, but whether the specific conduct furthered his employer's business. It did not.

Second, Plaintiffs do not dispute that Slade's and Harris's lack of knowledge defeats any failure-to-intervene theory under either state or federal law. And as explained above, Plaintiffs do not plausibly allege actual knowledge. (*See supra* at 4-7.)

14

Third, Slade and Harris are immune under Colorado common-law immunity for discretionary acts performed in good faith. Plaintiffs do not challenge good faith. (Dkt. No. 111, p. 29.) Plaintiffs instead only argue that their acts were not discretionary. But their argument defines the duty too generally. In *Leake v. Cain*, for example, the court held that even if an officer does not have discretion to arrest a clearly dangerous individual, he exercises discretion in determining whether the individual is dangerous. 720 P.2d 152, 164 (Colo. 1986). Likewise here, Slade and Harris exercised discretion in determining whether Aber violated the Constitution, even if they had no discretion to intervene had they known he violated the Constitution.

Fourth, Plaintiffs' allegations fall outside the CGIA's waiver for negligence in jail operations. The waiver reaches negligence claims where the "activity at issue relates to the facility's purpose." *Pack v. Ark. Valley Corr. Facility*, 894 P.2d 34, 37 (Colo. App. 1995). Plaintiffs argue that because conducting, recording, and preserving strip search videos relate to inmate safety, Aber's surreptitious viewing for personal gratification related to the operation of a jail. But *Pack* asks whether the "activity at issue" relates to the facility's purpose. 894 P.2d at 37. Aber's alleged voyeurism did not further inmate confinement, safety, security, evidence preservation, or any other jail function. Lawful footage does not make Aber's personal misuse of it the operation of a jail.

\* \* \*

The Court should dismiss all claims against La Plata Defendants with prejudice.

15

4906-9525-5730, v. 3

Respectfully submitted this 10th day of June, 2026.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Corey J. Thompson*
David J. Goldfarb
Corey J. Thompson
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  djg@bhgrlaw.com
       corey.thompson@bhgrlaw.com

*Attorneys for La Plata Defendants*

16

4906-9525-5730, v. 3

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2026, I electronically served the foregoing **LA PLATA COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** to the following e-mail addresses:

| | |
|---|---|
| Crist Whitney | M. Austin Mehr |
| Felipe S. Bohnet-Gomez | Kevin A. Mehr |
| Iris Halpern | Bartley K. Hagerman |
| Katie W. Valiant | Phillip G. Fairbanks |
| Matthew J. Cron | Mehr Fairbanks Trial Lawyers PLLC |
| Omeed M. Azmoudeh | 201 West Short Street, Suite 800 |
| Qusair Mohamedbhai | Lexington, KY  40507 |
| Siddhartha H. Rathod | amehr@austinmehr.com |
| Virginia H. Butler | kevin.mehr@mehrlawcolorado.com |
| Neil S. Sandhu | bkh@austinmehr.com |
| Aria Vaughan | pgf@austinmehr.com |
| Rathod \| Mohamedbhai LLC | |
| 2701 Lawrence Street, Suite 100 | Jason M. Kosloski |
| Denver, CO  80205 | Kosloski Law, PLLC |
| cw@rmlawyers.com | 1401 Lawrence Street, Suite 1600 |
| fbg@rmlawyers.com | Denver, CO 80202 |
| ih@rmlawyers.com | jkosloski@kosloskilaw.com |
| kw@rmlawyers.com | |
| mc@rmlawyers.com | Tyler A. Jolly |
| oa@rmlawyers.com | Jolly Law P.L.L.C. |
| qm@rmlawyers.com | 9996 W. U.S. Highway 50, Unit 1090 |
| sr@rmlawyers.com | Salida, CO  81201 |
| vb@rmlawyers.com | Tyler@JollyLawColorado.com |
| ns@rmlawyers.com | |
| av@rmlawyers.com | William T. O'Connell |
| | Mackenzie M. Novak |
| John C. Baxter | Christy N. Redmond |
| John C. Baxter, Attorney at Law | Thompson, Coe, Cousins & Irons, LLP |
| 1099 Main Avenue, #500 | 1700 Broadway, Suite 900 |
| Durango, CO  81301 | Denver, CO  80290 |
| baxterlaw@gmail.com | woconnell@thompsoncoe.com |
| | mnovak@thompsoncoe.com |
| | credmond@thompsoncoe.com |

*s/ Stephanie MacDonald*
Stephanie MacDonald

17

4906-9525-5730, v. 3