Exhibit B

| | |
|---|---|
| **COUNTY COURT LA PLATA COUNTY, COLORADO**<br>1060 EAST 2ND AVE<br>DURANGO, COLORADO 81301 | DATE FILED<br>October 6, 2026 1:32 PM<br>FILING ID: D52BEDCA12B31<br>CASE NUMBER: 2025M532 |
| **THE PEOPLE OF THE STATE OF COLORADO**,<br>Plaintiff,<br><br>v.<br><br>**EDWARD J ABER,**<br>Defendant | ▲ COURT USE ONLY ▲ |
| SEAN P. MURRAY, District Attorney,<br>by and through Deputy District Attorney Emily S. Morin, #57576<br>6th Judicial District Attorney's Office<br>P.O. Box 3455, Durango, CO 81301<br>Phone: (970) 247-8859 Fax: (970) 259-0200<br>E-Mail: SMurray@lpcgov.org | **Case Number: 25 M 532** |
| **RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS DUE TO THE PEOPLES VIOLATION OF RULE 16 AND C.R.S. 16-5-203** | |

THE PEOPLE OF THE STATE OF COLORADO, by and through Emily S. Morin, Deputy District Attorney in and for the Sixth Judicial District of the State of Colorado, hereby respectfully requests this Court to deny Defendant's Motion, in support thereof, state as follows:

## I. BACKGROUND

Defendant is charged with numerous counts of Invasion of Privacy for Sexual Gratification and one count of First Degree Official Misconduct arising from allegations that, while employed as Commander of the La Plata County Detention Center, Defendant repeatedly accessed body-worn camera footage depicting nude female inmates through his law-enforcement credentials.

The Complaint and Information was filed in July 2025 and included an extensive witness endorsement. The investigation and preparation of this case have continued since that filing, including continued analysis of digital evidence, body-worn camera footage, Evidence.com

records, forensic extractions, Internet Protocol address records, and issues raised through Defendant's own pretrial motions.

On September 11, 2026, the People filed a supplemental witness endorsement identifying additional witnesses whose testimony had become potentially material to the presentation, foundation, authentication, technical evidence, or rebuttal of issues raised in this case. The People also endorsed Division Chief Gary Gittins as an expert in detention-facility operations.

At the September 23, 2026 status conference, the Court directed the People to file a good-faith trial witness list within fourteen days. Contemporaneously with this Response, the People are filing that good-faith witness list in compliance with the Court's directive. The list substantially narrows the witnesses the People presently anticipate calling at trial.

The Court's Trial Setting Order independently requires each party to file a good-faith witness list. It further directs the parties, before the pretrial readiness conference, to confer regarding Rule 16 and reach an agreement concerning any outstanding discovery obligations. Defendant did not confer with the People regarding the witness-endorsement issue before filing the present Motion for Sanctions.

## II. LEGAL STANDARD

Crim. P. 16(I)(a)(1)(VII) requires the prosecution to provide a written list of the names and addresses of witnesses then known to the district attorney whom the prosecution intends to call at trial. C.R.S. § 16-5-203 contains a corresponding requirement. The People do not dispute that these disclosure obligations are mandatory.

Rule 16, however, also imposes a continuing disclosure obligation. If additional witnesses become known, or the materiality of their testimony becomes known after the initial disclosure, the prosecution must promptly notify the defense. Crim. P. 16(III)(b). The Rule

therefore expressly contemplates that witness needs and the materiality of particular testimony may develop as investigation and trial preparation continue.

If the Court determines that a violation of Rule 16 occurred, Crim. P. 16(III)(g) permits the Court to order disclosure, grant a continuance, prohibit introduction of undisclosed evidence, or enter such other order as is just under the circumstances.

In determining whether any sanction is warranted and, if so, what sanction is appropriate, courts consider the reason for and degree of culpability associated with the alleged violation, the resulting prejudice, events mitigating that prejudice, reasonable and less drastic alternatives, and other relevant circumstances. *See People v. Tippet*, 539 P.3d 547 (Colo. 2023).

A discovery violation, standing alone, does not justify a punitive or deterrent sanction. Such sanctions require willful misconduct or a pattern of neglect demonstrating a need to modify a party's discovery practices. *See People v. Lee*, 18 P.3d 192 (Colo. 2001); *People v. Whittington*, 556 P.3d 805 (Colo. 2024).

Where a sanction is warranted, the Court should impose the least severe sanction necessary to ensure compliance with the discovery rules and cure any demonstrated prejudice. *See Tippet*, 539 P.3d 547; *Whittington*, 556 P.3d 805.

## III. ANALYSIS

### A. The September 11 Endorsement Does Not Establish Bad Faith

Defendant asks the Court to infer bad faith from the number of witnesses endorsed by the People and the People's representation that this matter can be tried within five days. That inference is not supported by the record.

This case involves more than one hundred charged incidents, years of Evidence.com activity, extensive body-worn camera evidence, multiple forensic examinations, Internet Protocol

address records, and substantial foundation and authentication issues. Trial preparation has continued while the parties have litigated suppression issues, the availability of body-worn camera footage, digital evidence, and other evidentiary matters. As that preparation continued, the People identified additional witnesses whose testimony became material to the presentation and foundation of the evidence at trial.

The September 11 endorsement did not represent that every endorsed witness would necessarily testify. Nor does the fact that the People continued to evaluate and narrow the witnesses necessary for trial render the endorsement misleading. The number of witnesses ultimately called depends upon, among other things, evidentiary rulings, stipulations, foundation requirements, witness availability, and the need to avoid cumulative testimony.

Importantly, a substantial portion of the witnesses central to the People's anticipated presentation were endorsed in the original Complaint and Information. The September 11 endorsement did not suddenly introduce an entirely new prosecution case or evidentiary theory shortly before trial. Rather, it supplemented an already extensive endorsement as trial preparation continued and the need for particular foundational, technical, and corroborating testimony became clearer.

The Court subsequently directed the People to file a good-faith trial witness list. The People have complied with that directive and are contemporaneously filing a substantially narrowed list of witnesses they presently anticipate calling at trial. Defendant's suggestion that the People intend to call approximately 184 witnesses in a five-day trial therefore does not reflect the present posture of this case.

Nothing about that sequence demonstrates that the September 11 endorsement was knowingly false, misleading, or made in bad faith. At most, Defendant identifies a disagreement

concerning the timing and breadth of the supplemental endorsement. That is not the same as willful misconduct. *See People v. Whittington*, 556 P.3d 805 (Colo. 2024).

**B. Defendant Has Not Demonstrated The Prejudice Necessary To Justify The Requested Sanction**

Defendant focuses heavily on the date of formal endorsement while largely disregarding the extent to which the identities of witnesses and the substance of their anticipated testimony were already known through discovery.

This is not a case in which dozens of previously unknown witnesses suddenly appeared immediately before trial with previously undisclosed testimony. The investigation, reports, interviews, forensic examinations, Evidence.com materials, body-worn camera evidence, and digital records underlying the prosecution have been the subject of extensive discovery and pretrial litigation. Indeed, in responding to Defendant's Motion for Bill of Particulars in May 2026, the People specifically identified the Evidence.com access records, body-worn camera footage, date ranges, IP-address evidence, remote access, and the circumstantial theory by which Defendant's purpose would be established.

Defendant now also has the benefit of the People's narrowed good-faith trial witness list, filed nearly four weeks before trial. Defendant does not identify a particular witness on that narrowed list whose anticipated testimony is unknown, what investigation cannot now be accomplished, or what specific defense has been impaired by the timing of the formal endorsement.

Defendant's reliance on *People v. Edgar*, 578 P.2d 666 (Colo. App. 1978), is misplaced. In *Edgar*, the prosecution failed to comply with a specific discovery order even after being afforded an additional sixty-six days, provided a bare list of seventy-two witnesses eighteen days

before trial, provided deficient witness information, opened an incomplete prosecution file four days before trial, and failed to disclose material inconsistent statements of a prosecution witness. The Court characterized the circumstances as "massive non-compliance" and expressly distinguished them from a technical, good-faith failure to endorse a witness whose testimony was no surprise to the defense. *See Edgar*, 578 P.2d 666.

Those circumstances are not present here. The supplemental endorsement was filed weeks before trial, the evidence and investigation underlying the anticipated testimony have been extensively disclosed, the Court thereafter directed the filing of a narrowed good-faith witness list, and the People have timely complied with that directive.

### C. Defendant's Characterization Of The Prior Discovery Dispute Does Not Establish A Pattern Of Misconduct

Defendant also relies upon prior litigation concerning communications surrounding the referral of this matter to CBI and characterizes that history as evidence that the People previously misrepresented whether responsive material existed. The record does not support that inference.

In the People's Response to Defendant's Motion for Special Prosecutor, filed May 1, 2026, the People expressly stated that Lieutenant LaVenture had apprised District Attorney Murray that the internal affairs investigation had yielded potential criminal activity and that District Attorney Murray thereafter sent an email to CBI requesting further investigation. The People further stated that the email had previously been disclosed as an exhibit to the People's January 29, 2026 Response to Defendant's Motion for Discovery.

Thereafter, the Court directed the People to produce a report or memorandum memorializing the brief oral conversation between Lieutenant LaVenture and the District Attorney's Office. No such writing existed. In response to the Court's order, the People

requested that Lieutenant LaVenture memorialize the prior conversation. Lieutenant LaVenture authored the memorandum, provided it to the District Attorney's Office, and it was promptly added to discovery. The memorandum itself reflects that the underlying conversation occurred months earlier and concerned Lieutenant LaVenture's request that the matter be investigated further.

The subsequent creation and disclosure of a memorandum memorializing an earlier oral conversation does not establish that the People previously possessed that memorandum and withheld it. Nor, without more, does it establish that any prior representation to the Court was knowingly false.

Defendant's characterization of this prior dispute as evidence of a broader pattern of misconduct is likewise unsupported. In *People v. Tippet*, the finding of a pattern of neglect was based upon repeated discovery violations across numerous cases, prior judicial warnings, previously imposed sanctions, and continued discovery failures despite those warnings. *See People v. Tippet*, 539 P.3d 547 (Colo. 2023). No comparable record exists in this case. Defendant instead points primarily to a prior discovery dispute that was resolved through the Court's order and the People's subsequent compliance. That does not establish willful misconduct or a pattern of neglect.

**D. Defendant's Failure To Meaningfully Confer Is Relevant To Its Assertions Of Prejudice And Necessity For Sanctions**

Rule 16 contemplates an initial exploratory stage, initiated by the parties and conducted without court supervision, for the implementation of discovery required or authorized by the Rule. Crim. P. 16(IV)(a)(1)(I). Consistent with that framework, the Court's Trial Setting Order expressly directs the parties, before the pretrial readiness hearing, to confer regarding Rule 16

and reach an agreement to be presented to the Court concerning any outstanding discovery obligations.

The People do not contend that conferral relieves either party of its independent obligations under Rule 16. It does, however, bear directly upon Defendant's assertions of prejudice, bad faith, and the necessity for judicial intervention. Defendant did not confer with the People regarding the witness-endorsement issue before filing the present Motion for Sanctions.

This is not the first discovery-related issue in which the People have sought meaningful conferral. When Defendant previously alleged that videos were missing from discovery, the People requested that the motion be held in abeyance so the parties could confer regarding precisely what discovery Defendant contended was missing. The People further directed an investigator to undertake a detailed review of Defendant's allegations and expressly represented that conferral would likely resolve or narrow the issues presented.

Defendant did not similarly confer with the People regarding the witness endorsements before seeking sanctions. Instead, Defendant asks the Court to infer bad faith and impose sanctions while simultaneously requesting relief that the Court had already ordered and that the People have now timely provided.

**E. A Continuance Attributed To The Prosecution Is Not Warranted**

Defendant alternatively requests a continuance while asking that any resulting delay be attributed to the People for speedy-trial purposes. That relief is not warranted on this record.

In *People v. Steele*, the Colorado Supreme Court addressed a substantially similar claim arising from the late endorsement of prosecution witnesses. The defendant argued that the late endorsement forced her to seek a continuance and thereby sacrifice her speedy-trial rights. The Court rejected that argument and held that, absent prosecutorial bad faith, delay resulting from

the defendant's decision to seek a continuance was chargeable to the defendant. *See People v. Steele*, 563 P.2d 6 (Colo. 1977).

As discussed above, the record does not establish bad faith. The People supplemented their witness endorsement during ongoing trial preparation, have complied with the Court's directive to file a narrowed good-faith witness list, and Defendant has not identified concrete prejudice that cannot be addressed without continuing trial.

Accordingly, even if the Court concludes that additional preparation time is warranted as to a particular witness, there is no basis to attribute a defense-requested continuance to the prosecution for speedy-trial purposes. *See Steele*, 563 P.2d 6.

WHEREFORE, the People respond and respectfully request that this Court deny Defendant's Motion for Sanctions. In the alternative, should the Court determine that any disclosure violation occurred, the People request that the Court impose only such narrowly tailored remedy as is necessary to cure any demonstrated prejudice and deny Defendant's request that any continuance be attributed to the prosecution.

DATED this 6th day of October 2026.

Respectfully submitted,

SEAN P. MURRAY
DISTRICT ATTORNEY

/s/ *Emily S. Morin*
Emily S. Morin, Atty. Reg. No. 57576
Deputy District Attorney

Certificate of Service

I hereby certify that a copy of the foregoing pleading was served on all counsel of record via ICCES.

/s/ *Emily S. Morin*